# Mitchell *v.* The State.

## *Indictment for Obstructing Railroad Track.*

1. *Evidence as to identity of implement.*—On a prosecution for placing an obstruction on a railroad track (Code, § 4100), the evidence showing that the defendant was seen, at twelve o'clock of that night, walking down the track with a crow-bar on his shoulder, and that a broken crow-bar was found at the place the next morning, it is permissible for the prosecution to adduce evidence identifying it as one which had been kept and used at the depot for some time, and which had been missing from that place since the evening of the preceding day; and a witness who had often seen or used it may express his opinion or belief as to its identity, in such terms as will indicate whether his statement is made confidently or doubtingly; as, "I am satisfied it is the same crow-bar;" or, "I would say it is the same, but do not know that it is;" and if he hesitates to express his opinion, the court may instruct him "that he could determine whether it was the same on the same principle that he determined whether his hat or knife was his own."

2. *Admission of implements or tools as evidence.*—A railroad shovel found under the defendant's house after his arrest being identified as one which had been hidden, three or four months before the obstruction of the railroad track, in the grass near that spot, and which could not be found there on the day after the track was obstructed, the court may permit it to be produced and exhibited to the jury.

3. *Cross-examination of witness.*—A witness who has testified that he "is a special agent" of the railroad company whose track had been obstructed, and directed to "investigate and work up the case;" having answered, on cross-examination, that he did not know whether he was "a special agent or a detective," can not be further asked, "You have been in court frequently before, and examined as a witness frequently, have you not?"

4. *Evidence impeaching or sustaining witness.*—When a witness for the prosecution admits, on cross-examination, that he has himself been indicted for the same offense, the State may rebut any unfavorable inference which the jury might draw from this fact, by showing that his testimony had not been induced by any promise in reference to his own case.

[Mitchell v. The State.]

5. *Impeaching defendant testifying for himself.*—When the defendant in a criminal case testifies for himself, his credibility may be impeached by inquiry into his general character, and the inquiry is not limited to his reputation for truth and veracity.

6. *Argumentative, confused and involved charges* are properly refused.

7. *Charge as to construction of evidence.*—In a criminal case, if two conflicting theories arise on the evidence, one in favor of the defendant's innocence, and the other of his guilt, it is for the jury to determine which construction they will adopt; and a charge is properly refused which instructs them that they must adopt the theory which shows his innocence.

8. *Evidence impeaching witness.*—When the testimony of a witness, or a defendant testifying in his own behalf, is impeached by proof of his general bad character, as that he "is a mean negro," the jury can not be instructed to disregard this testimony because the witnesses do not swear they would not believe him on oath.

FROM the Circuit Court of Conecuh.

Tried before the Hon. JOHN P. HUBBARD.

The defendant in this case, George Mitchell, was indicted for placing an impediment or obstruction on or under the track of the Louisville & Nashville Railroad Company, near the trestle across Murder Creek in said county, about two miles from Evergreen. The obstruction was created by prizing up the iron rail and the cross-tie on which it rested, by using another cross-tie, a crow-bar, and a jack-screw; and this was done on the night of March 24–5, between twelve o'clock and day-break. The train of cars which passed before or about day-break, on the morning of the 25th, was running at the rate of nearly forty miles an hour, but was not derailed, being able to right itself after striking the obstruction. The crow-bar and jack-screw were broken, and were found on the spot the next morning. The evidence against the defendant was entirely circumstantial. The prosecution sought to identify the broken crow-bar with one which had been in use about the depot for some time, and which had not been seen after the evening of March 24th, and proved that the defendant, on the night of the 24th, about twelve o'clock, was seen walking down the railroad track, towards the trestle, with a crow-bar on his shoulder. S. Deming, a witness for the prosecution, who was the depot-agent at Evergreen, testified that there was a crow-bar at the depot which he had frequently seen and used, and that he had not seen it since the night on which the attempt to wreck the train was made; but, being asked to identify the broken crow-bar as the one he had seen and used, "said he could not tell positively, and would not like to swear positively that it was the same." The court then instructed the witness, "that it was a question of identity, and that he could determine whether it was the same bar upon the same principle that he determined whether his hat or his knife was

his own." The witness then answered, "I am satisfied that it is the same crow-bar we had at the depot." The defendant objected and excepted to the instruction given by the court, and also to the admission of the witness' answer. Sam. Thomas, another witness for the prosecution, who was a porter at the depot, and had frequently used the crow-bar, was asked to identify the broken crow-bar, and, after examining it, "said that he saw marks on it the same as the one he had used, but did not know it was the same;" and he then added, "I would say it was the same crow-bar." To this last statement the defendant objected and excepted.

A railroad shovel was produced in court, which was found under the defendant's house after his arrest. One Murray, a witness for the State, testified that the defendant came by his house before sun-rise on the morning of March 25th, and put a railroad shovel through the fence near his door, and that the shovel was gone when he looked for it an hour afterwards; and the shovel in court being shown to him, he said, "If that is not the same shovel, it was one just like it." The shovel was shown also to Wyatt Moore, another witness for the State, who was a section hand on the railroad, and who testified, "in substance, that it was the same one, or like the one which he hid down by the side of the railroad track, near the place where the obstruction was, before Christmas, 1890; that he covered it up under some leaves, in a patch of weeds; that the shovel was there three or four months before, and no one had hunted for it until the morning after the attempt to wreck the train, and it could not then be found." On this evidence, "the State offered the shovel in evidence," and the court admitted it against the objection and exception of the defendant.

W. J. Stewart, another witness for the prosecution, who had found the shovel under the defendant's house after his arrest, testified that he was "a special agent of the L. & N. Railroad Company, and came from Mobile to investigate and work up this obstruction immediately after it occurred." He was asked, on cross-examination, "if he was not a detective, and not a special agent;" to which he answered, "I don't know whether I am or not." He was then asked this question: "You have been in court before frequently, and a witness in court frequently, have you not?" The court sustained an objection to this question, and the defendant excepted.

Dick Agee, a witness for the prosecution, was asked, on cross-examination, "if he was not indicted for the same offense for which the defendant was on trial;" and answered, "yes." The solicitor asked him, in rebuttal, "I made you no promise, did I?" and he answered, "You made me no promise." The

[Mitchell v. The State.]

court overruled objections to this question and answer, and exceptions were reserved by the defendant.

The defendant testified as a witness in his own behalf, and denied all participation in the attempt to wreck the train, or any knowledge of it. After his testimony was closed, the State introduced several witnesses as to character, and asked each of them, "If he knew the general character of the defendant, in the neighborhood in which he lived;" and each answered that he did—"that his character was bad—that his character was that of a mean negro." The defendant objected and excepted to each of these questions, but no exception was reserved to the several answers.

The defendant requested the following charges in writing, and duly excepted to their refusal: (4.) "In the absence of proof of the exact time when the obstruction was placed on the track, the jury are not authorized from the evidence to fix the exact time, only from the evidence in the case; but, when there is proof that defendant was seen at a certain place, with a crow-bar, and the next morning at a certain place on the railroad at a certain time, then it is competent for him to prove that he was elsewhere at the times and places; and if he has shown this by proof, or the evidence in the case shows [?] at the times and places named and specified in the evidence, this is a circumstance in favor of the defendant; and if this, with the other evidence in the case, creates the abiding conviction in the minds of the jury that he has proven this, they must give him the benefit of it; and unless they believe from all the evidence, beyond all reasonable doubt, that defendant is guilty, they must acquit him." (9.) "It is the duty of the jury to look at all the evidence in the case; and if, after looking at all the evidence, there are two theories arising from the evidence, one of which shows his guilt and the other his innocence, it is their duty to adopt that theory which shows his innocence, and acquit him." (10.) "While it is competent for the State to show that the defendant is a man · of bad character, to affect the weight of his testimony, this but throws a shade on his testimony, which is not so dark as that, if the evidence should go further, and show not only that he has the character of being a 'mean negro,' but his character for truth and veracity is bad, and he would not be believed on oath in a court of justice by the witness or witnesses, and if there is no evidence that the witness or witnesses would not believe him on oath in a court of justice, then they must not look at his testimony with this shade on it."

STALLWORTH & BURNETT, for appellant, cited 67 Ala. 253; 63 Ala. 277; 55 Ala. 1; 73 Ala. 277; 89 Ala. 129.

[Mitchell v. The State.]

WM. L. MARTIN, Attorney-General, for the State, cited 1 Greenl. Ev., § 440; 1 Whar. Ev., § 511; *Turner v. McFee,* 61 Ala. 468; *Walker v. State,* 58 Ala. 393; *Mattison v. State,* 55 Ala. 224; *McInerny v. Irvin,* 90 Ala. 275; *Motes v. Bates,* 80 Ala. 382; *Fonville v. State,* 91 Ala. 239; *Gibson v. State,* 91 Ala. 64.

WALKER, J.—There was evidence tending to show that a crow-bar, which had been kept in the depot at Evergreen, had been missing from that place since the night the obstruction was put on the track; that the defendant was seen on the track that night, with a crow-bar, and that a crow-bar was found the next morning at the scene of the obstruction. Evidence was admissible to show that the crow-bar which was found there was the same one which was missing from the depot. On the question of the identification of persons or things, a witness may be allowed to speak as to his opinion or belief. He may be certain and free from doubt, or he may not be fully assured of the correctness of his conclusions. He may state the result of his examination of the person or object sought to be identified, and it is proper for him so to express himself as to inform the jury whether his statement is made confidently or doubtingly. The testimony is not to be excluded because the witness does not speak with positive assurance.—*Turner v. McFee,* 61 Ala. 468; *Walker v. State,* 58 Ala. 393; 1 Greenl. on Ev., § 440; 1 Wharton on Ev., § 511. There was no error in the instruction to the witness Deming on the question as to the identity of the crow-bar, and the answer of the witness, after such instruction, was properly admitted.

There was evidence tending to show that a shovel, which had been left on the side of the railroad near the scene of the obstruction, was found under the defendant's house after his arrest. It was not improper to permit this shovel to be produced and exhibited to the jury.— *Watkins v. The State,* 89 Ala. 82; *Holley v. The State,* 75 Ala. 14.

On the cross-examination of one of the witnesses for the State, he was asked as to the number of times he had been in court and had testified. It was not proposed to be shown that this witness had been examined in this case before, or had testified in other cases having any connection with or resemblance to this one. We are unable to discover the pertinency or relevancy of the inquiry. It seems plain that the defendant could not have been prejudiced by the action of the court in sustaining the objection to the question.

One of the witnesses for the State had been indicted for the

[Mitchell v. The State.]

same offense with which the defendant was charged. It was competent for the State to rebut the inference which might be drawn from this circumstance, which was brought out on a cross-examination, by proof that the witness had not been induced by any promise in reference to his own case, to testify against the defendant.

The defendant testified in his own behalf. It was competent for the State to impeach his credibility. For this purpose inquiry into his general character, or reputation, was proper. Such inquiry was not restricted to his reputation for truth and veracity. It was proper to ask a witness if he knew the general character of the defendant in the neighborhood in which he lived.—*McInerny v. Irvin*, 90 Ala. 275; *Ward v. The State*, 28 Ala. 53. No objection was interposed to the answers of the several witnesses to that question.

The fourth charge requested by the defendant is confused and involved; besides, it is plainly argumentative in character, and for that reason also, the court was justified in refusing to give it.—*Birmingham Union Ry. Co. v. Hale*, 90 Ala. 8; *Hussey v. The State*, 86 Ala. 34; *Snider v. Burks*, 84 Ala. 53. Obedience to charge No. 9 would have made it the duty of the jury to acquit the defendant, if one phase of the evidence tended to exculpate him, whether they believed that evidence or not. It is improper for the court to instruct the jury which of two conflicting theories of the evidence they shall except.—*Fonville v. The State*, 91 Ala. 39. Bad character may be proved against a witness for the purpose of impeaching his credibility, although the witnesses who testify as to his character fail to state that his character or reputation is such that he would not be believed when testifying on his oath in a court of justice. This consideration discloses one of several objectionable features in charge No. 10. That charge was properly refused. The other exceptions reserved by the defendant during the progress of the trial are obviously without merit.

Affirmed.