(101 So. 537)

### LAKEY v. STATE.   (7 Div. 977.)

(Court of Appeals of Alabama. June 3, 1924. Rehearing Denied June 17, 1924.)

**1. Criminal law ⬛992—Homicide ⬛314— Portion of verdict erroneously designating place of punishment held properly treated as surplusage, and sentence required by statute pronounced.**

Portion of verdict fixing punishment for a first degree manslaughter at one year imprisonment in penitentiary *held* properly treated as surplusage by court, and sentence of one year hard labor for county and additional period of ten months to pay cost pronounced, as provided by Code 1907, § 7620.

**2. Criminal law ⬛1130(4)—In absence of briefs for appellant, record examined for apparent errors and questions reserved by bill of exceptions considered.**

No briefs being filed for appellant, court will examine record for apparent errors and consider all questions reserved by bill of exceptions, under Code 1907, § 6264.

**3. Criminal law ⬛1086(14), 1120(1)—Error in not excluding testimony unavailable, where question eliciting it or objection before answer does not appear.**

Alleged error in not excluding testimony need not be considered, where question eliciting it or interposition of objection before answer does not appear.

**4. Criminal law ⬛368(1)—Officers' statement to defendant concerning information as to storage of whisky held admissible as res gestæ.**

In prosecution for killing deputy sheriff, everything said and done from time officers stopped car in front of defendant's house, including their statement to defendant that they had information that he had whisky stored in his barn, *held* admissible as part of res gestæ.

**5. Criminal law ⬛404(3)—Bottle in evidence held sufficiently identified as that found by deceased and other officers in defendant's barn.**

In prosecution for killing deputy sheriff assisting in search of defendant's barn for whisky, bottle introduced in evidence *held* sufficiently identified as that found in defendant's barn.

**6. Criminal law ⬛386—Testimony of defendant's wife as to whether she was frightened when deceased and other officers asked admission to house held inadmissible.**

In prosecution for killing deputy sheriff, testimony of defendant's wife as to whether she was excited or frightened when deceased and other officers came to door of house and asked to be admitted *held* properly excluded as concerning uncommunicated state of mind.

**7. Witnesses ⬛268(9)—Cross-examination of defendant's witness as to whom she had been talking to about case held permissible.**

Solicitor's cross-examination of defendant's witness, in murder prosecution, as to whom she had been talking to about case, *held* properly allowed.

**8. Criminal law ⬛665(4)—Rebuttal examination of witness remaining in court after invocation of rule held within court's discretion.**

In murder prosecution, allowing state's rebuttal examination of deceased's widow, who had remained in court room and heard testimony of other witnesses, though rule was invoked as to all witnesses, *held* within court's discretion.

**9. Homicide ⬛300(4, 6)—Charge held properly refused as singling out testimony and argumentative.**

In murder prosecution, charge that in determining whether deceased and other officers went to defendant's house on peaceful mission, not intending to search premises without defendant's voluntary consent, jury could look to fact that they went armed in nighttime without search warrant, etc., *held* properly refused as singling out testimony argumentative and erroneous.

**10. Criminal law ⬛814(3)—Charges held properly refused as not supported by testimony.**

In murder prosecution, charges that there was no evidence that whisky was found on defendant's premises by deceased and other officers, that statement by deceased was insufficient to warrant such conclusion or raise presumption that he found liquor in defendant's barn, etc., *held* properly refused as not supported by testimony.

**11. Homicide ⬛300(13)—Charge held properly refused as not requiring finding based on testimony.**

In prosecution for murder of deputy sheriff, charge that if defendant did not voluntarily consent to officers' searching his barn, they were trespassers and at fault in bringing on difficulty, *held* properly refused as not requiring finding based on testimony, which was conflicting and hence presented jury question.

**12. Criminal law ⬛753(1)—Affirmative charge properly refused where testimony is conflicting.**

Affirmative charge is properly refused where testimony is clearly conflicting.

---

**13. Criminal law ⊙⇒763, 764(8)—Charge held properly refused as on weight of conflicting evidence.**

In prosecution for killing deputy sheriff, charge that if jury believed evidence they were not authorized to find that defendant voluntarily agreed or gave his consent for officers to search his barn, *held* properly refused in view of directly conflicting testimony on matter.

**14. Criminal law ⊙⇒829(1)—Charges covered by charges given properly refused.**

Charges covered by charges given are properly refused.

**15. Criminal law ⊙⇒811(2)—Charge held properly refused as singling out testimony.**

In prosecution for killing deputy sheriff, charge to acquit, in case of reasonable doubt as to whether defendant voluntarily consented to officers searching his barn, *held* properly refused as singling out testimony.

**16. Homicide ⊙⇒300(13)—Charge held properly refused as not requiring finding based on testimony.**

In prosecution for killing deputy sheriff, charge that if officers used abusive, insulting or profane language to defendant, he could reply with like language, *held* properly refused as not requiring finding based on testimony.

**17. Homicide ⊙⇒112(2)—Defendant not justified in replying to abusive language with like language.**

That officers searching defendant's premises for whisky used abusive, insulting, or profane language to defendant did not justify him in replying to them with like language, so as to clear him of fault in bringing on difficulty.

**18. Homicide ⊙⇒300(7)—Charge held properly refused as abstract.**

In prosecution for killing deputy sheriff, charges that if jury believed evidence, officer accompanying deceased was trespasser in entering defendant's home, *held* properly refused as abstract and tending to prejudice jury in favor of defendant, who knew nothing of such trespass.

**19. Homicide ⊙⇒300(4, 6)—Charge held properly refused as singling out testimony, and argumentative.**

In prosecution for killing deputy sheriff, charge that burden was on state to show that officers raiding or searching defendant's premises were not at fault in bringing on difficulty, *held* properly refused as singling out testimony, and argumentative.

**20. Homicide ⊙⇒151(3)—State not required to show that defendant was not free from fault, until he shows he was in perilous position and retreated.**

Burden is not on state to show that defendant was not free from fault, unless and until defendant shows that he was in position of peril and retreated, if so required, its burden being merely to satisfy jury beyond reasonable doubt.

**21. Criminal law ⊙⇒798(1)—Charge to acquit unless each juror was satisfied of defendant's guilt held incorrect.**

Charge that jury must acquit, unless each member is satisfied of defendant's guilt beyond all reasonable doubt, *held* incorrect as overlooking possibility of mistrial.

Appeal from Circuit Court, Clay County; George F. Smoot, Judge.

Northern Lakey was convicted of manslaughter in the first degree, and he appeals. Affirmed.

Certiorari denied by Supreme Court in Ex parte Lakey, 211 Ala. 615, 101 So. 541.

The verdict of the jury was:

"We, the jury, find the defendant guilty of manslaughter in the first degree, and fix his punishment at imprisonment for one year in the penitentiary."

The following charges were refused to the defendant:

"CC. The court charges the jury that you may in determining whether the four men went to Lakey's house on a peaceful mission, and not intending to search Lakey's premises unless they could and should obtain the voluntary consent of Lakey, you may look to the fact that they went to Lakey's house in the nighttime armed with guns and pistols without a search warrant at a time when even a search warrant cannot be executed, unless supported by an affidavit positively stating that the property sought is on the person or at the place to be searched, and an indorsement made on the search warrant by the justice of the peace or other person issuing same that it is to be executed or that it may be executed in the nighttime."

"K. The court charges the jury that there is no evidence in this case that there was any whisky found on the defendant's premises, and the mere fact, if it be a fact, that Ramsey said, 'Here is a little,' is not sufficient to warrant you in reaching the conclusion that whisky was found in defendant's barn."

"X. The court charges the jury that the mere fact, if it be a fact, that Ramsey handed Hamlin a bottle of whisky and said, 'Here is a little,' is not sufficient to raise a presumption that Ramsey found liquor in the barn of the defendant, and if you believe the evidence in this case you would not be authorized to infer that there was any liquor found on the defendant's premises."

"7. The court charges the jury that, if Lakey did not voluntarily give his consent for the officers to search his barn, they were trespassers in so doing and at fault in bringing on the difficulty."

"6. The court charges the jury that if you believe the evidence in this case you are not authorized to find that Lakey voluntarily agreed or gave his consent for the officers to search his barn."

"17. The court charges the jury that if you have a reasonable doubt from all the evidence in this cause as to whether or not Lakey voluntarily gave his consent for the officers to

⊙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

search the barn, you should find him not guilty."

"16. The court charges the jury that if any of the officers used abusive or insulting or profane language directed to Lakey he could reply to them with like language without being at fault in so doing."

"3. The court charges the jury that if Stanford was not invited by the defendant's wife to go into the defendant's house he was a trespasser when he did go in."

Charges 2 and G are in substance the same as charge 9 treated in Lakey v. State, 18 Ala. App. 442, 93 So. 51.

"XX. The court charges the jury that the burden is on the state to show by the evidence in this cause that the officers making the raid or search of Lakey's premises were not at fault in bringing on the difficulty which resulted in the fatal shooting at Lakey's home."

Charge BB is in substance the same as charge CC above.

"I. The court charges the jury that the defendant is clothed with the presumption of innocence, and this presumption goes with him until it has been proven to you beyond all reasonable doubt that he is guilty, and until each member of the jury is satisfied from the evidence in this case beyond all reasonable doubt of the defendant's guilt, it is your duty to acquit him."

L. H. Ellis, of Columbiana, for appellant.

Brief of counsel did not reach the Reporter.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

Anything said or done during the search, tending to explain acts or motives at the time of the difficulty, was admissible as of the res gestæ. Lakey v. State, 18 Ala. App. 442, 93 So. 51. It was not permissible for defendant's wife to testify whether she was frightened. Kinsey v. State, 204 Ala. 180, 85 So. 519. There is a wide latitude allowed in the cross-examination of witnesses. May v. State, 202 Ala. 697, 79 So. 877; Stevenson v. State, 18 Ala. App. 174, 90 So. 140. Permitting a witness to testify who has not been under the rule is discretionary with the court. 1 Mayfield's Dig. 879. Charges not requiring the finding of the jury to be based upon the evidence are properly refused. Edwards v. State, 205 Ala. 160, 87 So. 179.

BRICKEN, P. J. This defendant was originally indicted for murder in the first degree, and the first trial of this case resulted in a conviction of murder in the second degree and a sentence to 40 years imprisonment in the penitentiary. On appeal from said judgment the Supreme Court of this state reversed same and remanded the cause. Lakey v. State, 206 Ala. 180, 89 So. 605.

[1] Upon the second trial in the court below the state confessed the defendant's plea of autrefois acquit as to murder in the first degree, and he was put upon trial for the lesser offenses comprehended and included in the indictment. He was again convicted of the offense of murder in the second degree, and his punishment fixed at 17 years in the penitentiary. On appeal from that judgment this court adjudged a reversal. 18 Ala. App. 442, 93 So. 51. He was again tried in the court below on March 26, 1923, which trial resulted in his conviction for manslaughter in the first degree, the jury fixing his punishment at one year imprisonment in the penitentiary. The court received the verdict and properly sentenced the defendant to one year hard labor for the county and for an additional period of time of 10 months to pay the cost. That portion of the verdict of the jury designating the place of punishment was properly treated by the court as surplusage, the place of punishment being provided by section 7620 of the Code 1907 under the terms of which the prisoner was properly sentenced. From this judgment he appeals.

[2] No briefs have been filed for appellant, but, as the law requires, we have examined the record for apparent errors and have considered all questions reserved by the bill of exceptions. Code 1907, § 6264.

The testimony offered by the state, briefly stated, tended to show that Sheriff Hamlin and his deputy, Ramsey, the deceased named in the indictment and who the state insists was killed by the defendant, which is the basis of this prosecution, together with two federal prohibition officers, went to the home of the defendant somewhere about midnight on the night of July 2, 1920; that they found the barn was locked, this being the place that they desired to search, and that thereupon they went to the house of the defendant stating to him that they had been informed that he had whisky on his premises, and that they wished to make a search thereof; that he voluntarily consented, got up, got his keys, and went and opened the barn for them; that after they had searched for some little time, the deceased (Ramsey) found a bottle containing whisky in a certain part of the barn; and that when this whisky was found the defendant became suddenly enraged because of it, began to curse the four officers, and without any overt act on the part of the deceased or any other officer, fired at the deceased three times, the deceased firing at the defendant once and the other officers firing at him subsequently, but the defendant escaped without injury.

The defendant's version of the affair was, and his testimony tended to show, that the officers put the defendant under duress, and that when he was told by the officers that they wanted to search the barn, he unlocked the door, no showing of force being apparent on the testimony other than inferentially; that after they got to the barn the deceased

flashed a light in defendant's face, was advancing on him with a pistol after the party had been cursing him for some time; and that he fired in self-defense. The defendant's testimony also had a tendency to show that the officers had been drinking at the home of one Gordon, who had been raided during the early part of the night, but all of the officers denied that any of them were drinking on the night of the tragedy.

[3, 4] State witness Allen, a federal prohibition officer, while testifying on direct examination, stated that the officers told the defendant they had information that he had whisky stored in his barn. The defendant moved to exclude this statement. In the first place, it does not appear what the question was which elicited the statement, and that objection was interposed before the question was answered. The statement, however, referred to the res gestæ, this court having held on the previous appeal (18 Ala. App. 442, 93 So. 51 [3]), that anything said or done during the search tending to explain acts or motives at the time of the difficulty, was admissible as res gestæ. Everything that was said and done from the time that the officers stopped the car in front of the defendant's house was part of the res gestæ, all of the acts of all of the party being a string of events following immediately upon each other.

[5] Counsel for defendant objected to the introduction in evidence of the bottle which was found in the defendant's barn upon general grounds, and upon the particular ground that it was not shown to have any connection with the case, and was not properly identified. The state's witness Allen testified that he did not know where Hamlin got the bottle, he did not see him get the bottle, and was then asked if it was the one Hamlin gave him, and he said, "Yes; that looks like the bottle, that that was the bottle or resembled it very much." Allen also testified that Hamlin handed the bottle to him. The witness Hamlin testified that the bottle referred to looked like the bottle that Ramsey handed to him and the last he saw of it at the other trial, it was turned over to Mr. Dean; that he, Hamlin, had it up to the time of the last trial and the bottle he turned over to Dean was the one delivered to him by Ramsey. It will therefore be noted that the testimony referred to in connection with that of the witness Dean tends to identify the bottle as being the one which came from the defendant's barn.

[6] The defendant's counsel was properly not allowed to have the defendant's wife testify as to whether she was excited or frightened at the time one of the officers came to the back door of the house and asked to be admitted. This testimony is not within the rule referred to in Kinsey v. State, 204 Ala. 180, 85 So. 519, which holds

20 Ala.App.—6

that where a statement is attributed to a person, such person may testify as to whether or not he or she was frightened at the time the statement was made. The testimony here sought was as to an immaterial matter, it being the uncommunicated state of mind of the witness as to which she was not privileged to testify.

[7] There is no merit in the exception reserved to the ruling of the court upon the cross-examination of defendant's witness Mrs. Gordon. The solicitor asked her: "Who have you been talking to about this case?" As stated, the testimony here objected to by counsel for the defendant was on the cross-examination of the defendant and one of his witnesses, and was properly allowed by the court. May v. State, 202 Ala. 697, 79 So. 877; Stevenson v. State, 18 Ala. App. 174, 90 So. 140. In these cases the rule is laid down to the effect that there is a wide latitude allowed in the cross-examination of the witnesses which will not be interfered with by an appellate court, unless the discretion of the lower court is shown to have been abused; no abuse of the court's discretion appears in this connection here.

The objections interposed to questions propounded to witnesses Allen and Hamlin, when recalled by state, were not well taken, and the exceptions reserved were without merit. The testimony sought in this connection was clearly in rebuttal and therefore admissible and relevant.

[8] The next exception we observe is relative to the ruling of the court in allowing the state to examine on rebuttal Mrs. J. B. Ramsey, widow of the deceased named in the indictment; the objection being predicated on the ground that the rule had been invoked as to all witnesses, and that this witness had remained in the courtroom during the trial, and had heard the testimony of the other witnesses. This exception cannot be sustained as the matter complained of by this ruling was within the discretion of the court, and for this reason the ruling in this respect is not subject to revision. 1 Mayfield Dig. p. 879, § 15.

[9] The first refused charge appearing in the transcript is marked CC. This charge was properly refused, as it singles out a part of the testimony, is argumentative, and moreover does not state the law.

[10] Charges K and X are not supported by the testimony, they were properly refused. Under the evidence adduced upon this trial the question presented by said charges was for the jury, and not a question of law for the court.

[11] Charge 7 does not require the finding of the jury to be based on the testimony in the case. Edwards v. State, 205 Ala. 160, 87 So. 179. Moreover, the evidence was in conflict on this question and presented a jury question.

[12] Charge 1 was properly refused, it being the affirmative charge and the testimony being clearly in conflict.

[13] Charge 6 was properly refused for the reason that the testimony on the matter referred to was in direct conflict.

[14] Charge 22 is invasive of the province of the jury and the principle of law is covered by given charge E.

[15] Charge 17 singles out a part of the testimony and is otherwise bad.

[16, 17] Charge 16 does not require the finding of the jury to be based on the testimony; nor does this charge properly state the law. Edwards v. State, supra.

[18] In Lakey v. State, 18 Ala. App. 442, 93 So. 51, supra, the following charge was asked, being charge 9:

"The court charges the jury that, if they believed the evidence in this case, Stanford was a trespasser when he went into the defendant's home where the defendant's wife was in the room on the south side of the house."

This court held that the charge was abstract; the defendant knowing nothing about this trespass and his acts could not have been affected by it, and the only purpose of it would have been to prejudice the jury in favor of the defendant. Under the rule there stated, charges 2, 3 and G are abstract.

[19] Charge 20 singles out a part of the testimony; it is also argumentative and was properly refused.

The substance of charge 23 is covered by given charges B and 13.

[20] Charge XX does not state a correct principle of law. The burden which devolves upon the state is to satisfy the jury beyond a reasonable doubt, and the burden is not on the state to show that the defendant was not free from fault, unless and until the defendant shows that he was in a position of peril and retreated if he was under the duty to retreat.

Charge BB singles out a part of the testimony; it is argumentative and otherwise objectionable.

Charge M is covered by given charge R.

Charge S is covered by the oral charge and given charge AA.

Charge J is elliptical and unintelligible.

Charge T invades the province of the jury. The defendant might have voluntarily consented to the search under the conditions set forth in the charge. Moreover, the subject-matter of the charge was fully covered by other instructions.

Charge YY is covered by the oral charge.

[21] Charge I is incorrect in that it overlooks the fact that a mistrial might result; it is otherwise bad.

Charge 10 is covered by other instructions and is also defective for the reason that a search might have been both by the consent of the defendant and offensive to him.

Charge 11 singles out part of the evidence and is abstract.

Charge 9 is argumentative and abstract.

Charge 12 is covered by the oral charge.

Charge 11½ does not require the finding of the jury to be based on the testimony. Edwards v. State, supra. It is also argumentative and properly refused.

Charge O is covered by the oral charge and given charge AA.

Charge 5 is misleading for the reason that, if the defendant gave his consent, the search was voluntarily made. Moreover, the principle covered by the charge is included in given charge R.

We find no error in any of the rulings of the court prejudicial to the substantial rights of the defendant. The record being also free from error, the judgment of the circuit court appealed from will stand affirmed.

Affirmed.