66 So.2d 552

## DENNISON v. STATE.

### 5 Div. 550.

Supreme Court of Alabama.
June 30, 1953.

Rehearing Denied Aug. 6, 1953.

Si Garrett, Atty. Gen., and Arthur Joe Grant, Asst. Atty. Gen., for the State.

W. Carver Woodall, Tallassee, for appellant.

SIMPSON, Justice.

Mrs. Earle Dennison was convicted of murder in the first degree for taking the life of her two and one-half year old niece, Shirley Dianne Weldon, by administering arsenic poison. The death sentence was imposed and she appeals from that judgment.

Appellant was ably represented by court-appointed counsel who, responsive to his duty in the premises, orally argued the case on submission here and has filed brief in support of the propositions advanced as error. A careful consideration, however, has convinced us that no error prejudicial to the substantial rights of appellant intervened pending trial and that the judgment must be affirmed.

Mrs. Dennison is a trained nurse of more than twenty-five years experience and has been a member of the nursing staff of the Wetumpka General Hospital for several years and was so employed at the time of the taking of the life of the little child and up until her arrest. After her arrest she confessed to the crime and the confession, as well as other evidence, tends to show she administered the poison by placing it in an orange drink which the little girl drank from a measuring cup, and after the child became very ill and vomited, appellant apparently gave her a drink of Coca-Cola, also containing arsenic poison, which caused the child to vomit again. Shirley Dianne was taken to the hospital about 4:55 P.M. and died some few hours later. An autopsy performed by the State Toxicologist, Dr. C. J. Rehling, indicated she had died of arsenic poison. An examination by this well-known expert of the Coca-Cola bottle, as well as the measuring cup, disclosed a small sediment of arsenic poison and the little girl's dress, as well as her mother's which had also become contaminated from the child's regurgitation, show-

ed a large quantity of arsenic poison. About 5:30 on the same afternoon, while Shirley Dianne was in the hospital, appellant left the hospital and went to Deatsville and paid a premium on a $500 life insurance policy she had taken on the life of the child, which was about to lapse for non-payment of premium and in which she was the sole beneficiary. There was evidence that appellant had applied for a policy in the amount of $5,000 on the child's life, which had also been issued and on which she had paid the premium, she being the principal beneficiary therein. If, therefore, it were necessary to search for a motive we would find it here.

■ The first contention for error is that these articles containing the poison and a towel and another Coca-Cola bottle, which contained no arsenic, were improperly allowed in evidence because not properly identified and not shown to have been in substantially the same condition as when the offense was committed. The evidence identifying and connecting these articles to sustain their admissibility was: The articles were at the home of the Weldons (parents) when they took the little child to the hospital and within a few hours thereafter, after the child had died, the father, Gaston Weldon, went back to his home, placed the articles in a paper sack, taking the sack and contents with him to his brother's home and kept them in the bedroom where he slept that night. No other person or persons handled the sack or contents so far as appeared, and on arising the next morning he left the sack and contents in that bedroom, made a trip to Wetumpka and then returned soon to his brother's home and took the sack with its contents back to Wetumpka to the office of the county coroner, Dr. W. A. Edwards, who opened it and looked in it in the presence of witnesses. Dr. Edwards then and there delivered the sack and contents to Dr. Rehling. Upon receiving these articles, Dr. Rehling took charge of them, took them to his office at Auburn, made a scientific analysis of each and produced them on the trial. They had been in his sole custody since he received them. All of the witnesses who testified with reference to the articles showed that they ap-

peared to be in the same condition when turned over to Dr. Rehling as when Weldon procured them from his home after the child's death and there is no evidence affording the slightest inference that anyone tampered with the articles before or after he procured them at his home. The testimony is clear that appellant carried the measuring cup into the kitchen and also the Coca-Cola bottle, out of which receptacles the child had drunk. These containers had been rinsed out and, although no one saw appellant rinse them out, she did go to the kitchen with them. The State clearly met the burden of duly identifying and connecting these articles so as to authorize their introduction.

■ The pertinent rule is that articles or objects which relate to or tend to elucidate or explain the issues or form a part of the transaction are admissible in evidence when duly identified and shown to be in substantially the same condition as at the time of the offense. The preliminary proof identifying and describing the considered articles fully complied with the rule and under no sort of theory would the trial court have been warranted in refusing their admission. 22 C.J.S., Criminal Law, § 709, page 1203; 20 Am.Jur. 602, § 719; Alabama Coca-Cola Bottling Co. v. Pope, 232 Ala. 32, 166 So. 682; Fitzhugh v. State, 35 Ala. App. 18, 43 So.2d 831; Smith v. State, 247 Ala. 354, 24 So.2d 546; White v. State, 249 Ala. 501, 31 So.2d 335; Powe v. State, 214 Ala. 91, 106 So. 503; Hardley v. State, 202 Ala. 24, 79 So. 362; Lakey v. State, 20 Ala.App. 78, 101 So. 537, certiorari denied 211 Ala. 615, 101 So. 541; Mitchell v. State, 94 Ala. 68, 10 So. 518.

The next insistence of error relates to two confessions of the defendant, one made to Mrs. Edwina Mitchell, Superintendent of Julia Tutwiler Prison for Women, and a second one to Dr. Rehling. It is argued that these confessions were not proven to have been voluntary due to the physical condition of the defendant and the circumstances of their narration. As to this the evidence shows: The confession to Mrs. Mitchell was made about 8:30 A.M. on May 17, 1952, in the hospital ward of the prison in the presence of Mrs. Mitchell and the

Assistant Superintendent, Mrs. Chambliss, after Mrs. Mitchell had asked her if she wanted to make a statement. The defendant said she did and proceeded to make a confession which Mrs. Mitchell reduced to writing and the defendant signed. Proper predicate was laid for the introduction of this confession by proving it to have been free and voluntary. The confession to Dr. Rehling, with the Sheriff of Elmore County and perhaps others present, was made the same day a few hours later. The confession to Dr. Rehling was not written down in her exact words but was in substantial effect that as related by her. It was read over to her; she affirmed its correctness and signed each page of the statement. This confession was also proven to have been freely and voluntarily made.

It is argued for appellant that because of Mrs. Dennison's physical condition and her surroundings at the time these confessions were inadmissible. The basis of the argument is that when the defendant was arrested on May 8 she took an overdose of sleeping pills, evidently with the intention of committing suicide; was unconscious when she was taken into custody and to jail; was later removed to the hospital in Wetumpka where she remained four days, after which she was carried to Tutwiler Prison and placed in the hospital ward; that she was in a weakened condition when placed in the hospital ward and that her weakened condition, superinduced by her attempt at self-destruction, in connection with her detention in the hospital ward, evidenced the fact that the confessions were involuntary or at least rendered them so unreliable as to have warranted their exclusion by the court.

We do not regard the position as tenable. There is no evidence to indicate that the defendant was not in full possession of her mental faculties when she made either of the confessions or that she was in the least coerced or otherwise induced to make them. On the contrary, it appeared from the circumstances of their narration as well as by the testimony of the witnesses that both confessions were freely and voluntarily made. She was not placed in the hospital ward because of her physical condition but, according to Mrs. Mitchell, because that was the only convenient place for her detention. And the testimony of two medical witnesses who visited her in the hospital was that she was not ill but only weak from having taken sleeping pills. Nothing in the record indicates in the slightest any disparagement of the voluntary nature of the confessions.

The fact, if so, that the defendant had been or was ill when the confessions were made, or because they were made in the presence of officers of the law and at their solicitation, would not render the confessions inadmissible if otherwise shown to have been voluntary, though, of course, would be circumstances to be considered by the court in determining whether or not the confessions were in fact voluntary. Smith v. State, 248 Ala. 363, 27 So.2d 495.

Likewise, for a confession to be voluntary it is not necessary that it proceed wholly at the suggestion of the prisoner. Levison v. State, 54 Ala. 520. Nor is it rendered involuntary because not verbatim as related by the prisoner. If its transcription is substantially as related and affirmed by the prisoner as correct, it is none the less admissible. 20 Am.Jur. 427, § 492.

It is true the defendant may have been somewhat weakened by having taken the sleeping pills some nine days previously, but there is no evidence to indicate in the slightest that she was not in full use of her mental faculties or that the confession was induced by any kind of duress or promise. In this connection it is to be observed that the voluntariness of a confession is not affected by the fact that the accused was not in full possession of her faculties, although that is a circumstance to be considered by the jury in weighing its verity. Vinzant v. State, 28 Ala.App. 220, 180 So. 736; Smith v. State, 25 Ala.App. 297, 145 So. 504; Finch v. State, 81 Ala. 41, 1 So. 565; 22 C.J.S., Criminal Law, § 828, page 1451.

We treated of this latter principle in the recent case of Redwine v. State, 258 Ala. 196, 61 So.2d 724, and there cited numerous authorities. The rule was deduced that the mere fact that accused was not in full pos-

session of his mental faculties when the confession was made would not render it inadmissible, but only affected its weight to be accorded by the jury; or was provable merely to support other evidence that the statement was not voluntary. To render such confession inadmissible on that ground alone the mania must have been such that accused was either an "idiot" or a "lunatic during lunacy."

Counsel argue that "the situations and surroundings in this case were such as to cast a cloud of unreliability on these confessions. The defendant had only a short time before come from the Wetumpka Hospital and was placed in a hospital bed at the prison. She was weak and under a severe strain * * * and in this condition, while lying upon a hospital bed and in the presence of the sheriff and state toxicologist and the superintendent and assistant superintendent of the prison, and while sick this statement was obtained. * * * We insist that these alleged confessions were not voluntary and freely made but were made under such circumstances as to render them unreliable." Giving this statement its full import, those facts, in connection with the circumstances of the defendant, would not affect the admissibility of the confessions, but merely the weight to be accorded them by the jury.

The duty, as we have said so many times, of determining the voluntariness vel non of a confession so as to authorize its admissibility is addressed to the trial court in the exercise of an enlightened discretion. We think that discretion was soundly exercised in the instant case and no error intervened in admitting either of the confessions in evidence.

It is also argued that error intervened in permitting Dr. Rehling to testify with respect to a chemical analysis of some of the organs of the body of deceased, which he judged to contain arsenic poison, with large concentrations in the vital organs, the liver, the stomach and the spleen. This argument is grounded on the contention that "the body was not in the same condition at the time of the autopsy as it was when breath left the body at the hospital." The embalming process, with an in-

jection of some embalming fluid, had already been partially accomplished when it was ordered stopped and Dr. Rehling performed the autopsy. It was clearly shown by the testimony of this expert that the cause of the high concentration of arsenic in the vital organs was not by any process of embalming but was by oral administration to the patient during life. To show that the embalming fluid contained no such poison, Dr. Rehling had examined a full bottle of the fluid which was shown by the mortician to have been similar to the fluid injected into the body. The embalmer did testify that he could not swear the fluids were the same, but it was his judgment that they were. Otherwise than this partial embalmment with the injection of the embalming fluid, the body was in substantially the same condition when the autopsy was performed as when it was received at the funeral home from the hospital. This proof was sufficient to authorize the stated testimony of the doctor. In order for such testimony to be admissible it is not required that proof be made that the body was in the exact condition as it was when death occurred. The evidence was prima facie admissible if it is shown that the body had undergone no substantial change with regard to the matter under investigation; that there had been no illegal tampering with it or that any alteration from its original condition at death did not obliterate or change the condition which is sought to be shown. If, as here, the change was incidental and in no way affected the question at issue, the testimony was admissible. 20 Am.Jur. 602, § 719, and cases cited in notes 4 and 5; Fitzhugh v. State, supra.

Finally, it is argued that defendant's requested Charges 16 and 19 were erroneously refused. A careful reading of the record discloses that there was no error in their refusal. The charges were fully covered in the court's oral charge and if not otherwise faulty, failed to hypothesize on a finding from the evidence.

The court in consultation has given careful consideration to the entire record and has discovered no error to reverse.

Affirmed.

All the Justices concur.