326 So.2d 675

**Noah Michael SUITER**

v.

**STATE.**

**5 Div. 297.**

Court of Criminal Appeals of Alabama.

Nov. 4, 1975.

Rehearing Denied Dec. 9, 1975.

Alice L. Anderson, Enterprise, for appellant.

William J. Baxley, Atty. Gen., and Jack L. Blumenfeld, Asst. Atty. Gen., for the State.

HARRIS, Judge.

The grand jury of Coffee County returned a two-count indictment against appellant charging, (1) possession of amphetamine, and (2) the sale of amphetamine.

Appellant filed a motion for change of venue alleging that because of widespread publicity by the news media he was unable to obtain a fair and impartial trial in Coffee County and the other surrounding counties in that area of the state. At the conclusion of the hearing on the motion the court granted the motion and transferred the case to Lee County.

At arraignment, with employed counsel present, appellant pleaded not guilty.

The case was set for trial in the Circuit Court of Lee County on March 11, 1975. By agreement of counsel the court struck count one of the indictment and the case was submitted to the jury on count two. On March 12, 1975, the jury returned a verdict finding appellant guilty of the sale of amphetamine as charged in count two of the indictment but declined to assess a fine. Thereupon the court sentenced the accused to twelve years imprisonment in the penitentiary.

The first witness called by the state was George Donald Smith who testified that he was employed by the Alabama Department of Safety as a State Trooper assigned to the Law Enforcement Division. That on October 24, 1973, he was assigned as a narcotics undercover agent in the Investigation and Identification Unit and was engaged in undercover work in Coffee and Dale Counties. His avowed purpose was to ferret out the sale and possession of narcotics in that area of the state.

He posed as an ex-convict. He was dressed in blue jeans and a tee shirt. He wore his hair below his ears. He had a mustache and a pretty good growth of beard at that time. He further testified that he took up residence at a place called Shady Grove Trailer Park in Daleville, Dale County, Alabama, where on October 24, 1973, he met appellant who came to the trailer at around 5:00 p.m. He described the trailer as having three bedrooms and from eight to ten young people would spend the night. That it was an open door situation where young people would go and leave at their pleasure. That three girls stayed in this trailer more or less on a permanent basis. When eight to ten people spent the night, they would sleep in sleeping bags on the floor, on sofas, couches, or wherever they could lay their heads. He occupied a private bedroom in the trailer.

He stated that when appellant came in, he asked him if he could sell him some "speed," and he said yes, "but I'll have to go get it." They agreed on the price at $45.00 per one hundred tablets of amphetamines known as "white cross." This witness stated that appellant used the term "white cross." He said he left Daleville and went to Coffee County to a place known as "Sergeant Pepper's" which was a "hangout" for hippie-type people. He stated this was a little fun area type place that had pinball machines and other game machines. He arrived at this place at 8:00 p.m. and appellant arrived a few minutes before 9:00 p.m. Appellant told him he had the "white cross" or amphetamines for him but he wanted to go outside as he didn't want to be seen selling the drugs on the inside of the place.

Smith further testified that he was driving an orange van which he used for undercover work. He and appellant walked out and got in the van and appellant asked him to pull down toward the end of a shopping center where the place was not so well lighted and he drove the van as requested by appellant and stopped the van. At this location appellant pulled out a little plastic bag tied with a little knot at the top. The plastic bag contained the amphetamines—supposed to be one hundred and he asked Smith to count them.

From the record:

"A. Well, I took out a cooler-top, an ice chest cooler top and laid on the console of this van and I clipped the top, had to clip the top off of the little plastic container, and I poured them out there and I wasn't that interested in being exactly a hundred, so I just made a fast count. He wanted me to be satisfied that there was that amount. It turned out not to be that amount but I did thumb through them there and I said, 'That's fine,' and pulled out forty-five dollars and paid him and then he left.

"Q. Did you see the defendant when he left?

"A. As I recall, he left with two girls in a little foreign-type sports car, MG or something of that sort."

After the sale and purchase were completed Smith drove his van back in front of "Sergeant Pepper's" place and parked. Since the plastic bag delivered to him by the appellant had been cut, he poured the small tablets in a chewing gum pack and crimped the top and that made a container for the tablets and he put that container in his pocket where it remained until about 12:40 a.m. when he turned over the container to Investigator Doug Nelson at a prearranged spot on a little dirt road in Daleville behind some abandoned houses where they could not be seen. He further stated that when he gave Nelson the container in which he put the tablets, they were in the same condition they were in when they were delivered to him by appellant as he had not opened the package.

Smith further testified that he arranged to have himself and appellant arrested at a prearranged place. He had appellant in the van with him and drove past the Coca Cola place where the officers were going to be parked. As he was driving down the road the officers stopped the van and arrested him and appellant. They were searched at the place of arrest and carried to the Dale County Jail. Later Smith was released from jail. The arrangements for the sale and delivery of the amphetamines were actually made in Dale County but the actual sale and purchase were made in Coffee County.

On cross-examination he testified that this was not the first occasion that he had dealings with appellant pertaining to drugs. He had dealings with him on three occasions. His first contact with appellant was at his home in Daleville where appellant sold him marihuana. On the second occasion the discussion was about drugs but the deal fell through. The third occasion occurred on October 24, 1973, when he bought the amphetamines from appellant for $45.00 cash.

On being questioned by the court Smith testified that appellant never offered to sell him drugs, or marihuana, or amphetamines or anything without Smith asking him for it.

Corporal Doug Nelson was the next witness called by the state. He testified that he was employed by the Alabama Department of Public Safety and is still with the Department. That in October, 1973, he was working in the Narcotics Unit, stationed in Dothan, and was in charge of ten counties. He stated that in the early marning hours of October 25, 1973, he met Patrolman George Donald Smith on a small county dirt road close to Cairn's Army Air Field in Daleville, Alabama. He said he knew Smith as a State Trooper

assigned to the Narcotics Unit, under his direct supervision, working undercover in Daleville and Enterprise. He further stated that he and Smith had routine meeting places and on October 25, 1973, he met Smith at the place above described and received from him 87 tablets of "white cross" amphetamines. When asked what he did with these tablets, he replied:

"I took these tablets and sealed them in a manila envelope, a small one, about three by five, placed the evidence inside, sealed the opening with—the little flap, wrote my initials cross the flap and sealed it with plastic tape and on the outside of it, I wrote, 'Mike Suiter,' and put my initials on it."

He further testified that he received the tablets from Smith at 12:40 a.m. and after sealing the envelope, he put it in his briefcase and locked the briefcase in the trunk of his car and that afternoon at 1:50, he went to the Enterprise State Laboratory and gave the envelope to Mr. Richard Carter who was in charge of the laboratory of the State Toxicologist Department. He stated that he was the only person who had a key to the trunk of his car. He testified that when he delivered the envelope to Mr. Carter, it was in the same condition as when he received it from Officer Smith.

There was no cross-examination of this witness.

Mr. Richard Dale Carter testified he was employed at the Enterprise Regional Laboratory of the Alabama Department of Toxicology and Criminal Investigation and had been so employed for over four years. That on the afternoon of October 25, 1973, around 1:50 o'clock, Officer Doug Nelson turned over to him a small manila envelope which was sealed with masking tape and the initials "D.N." on it. He stated he put this envelope in the evidence room in the laboratory and the next day he sent it by certified mail to Mr. Taylor Noggle to the main laboratory in Auburn, Alabama. He further testified that at the time he mailed the envelope to Auburn it was in the same

condition it was in when he received it from Doug Nelson.

Mr. Taylor Noggle testified that he was employed by the Department of Toxicology and Criminal Investigation in the Auburn Regional Laboratory. He said that on October 25, 1973, he received a sealed manila envelope by certified mail number 184667, from the Enterprise Laboratory, containing a second sealed manila envelope, which had a Doublemint chewing gum package containing approximately eighty white double-scored tablets and he made an analysis on these tablets and they contained DL amphetamines. The qualifications of Mr. Noggle were admitted by defense counsel.

Upon being questioned by the court this witness said that amphetamine is a drug which is classified as a central nervous system stimulant. After the analysis was made he sealed the tablets and kept them in his possession until he went to a preliminary hearing in Coffee County in December of 1973, where the envelopes containing the drugs were introduced in evidence during the preliminary hearing. He stated that except for the analysis he made of the contents of the envelope, it was in the same condition as when he received it by certified mail.

From the record:

"MR. INGRUM: We have no further questions.

"THE COURT: At the time—you carried it to a preliminary hearing?

"THE WITNESS: Yes, sir, that's correct.

"THE COURT: Well, you turned it over in Court at the preliminary hearing?

"THE WITNESS: Yes, sir.

"THE COURT: At that time was the envelope and the contents therein in the same condition as they were when you received them through the mail except

for the examinations that you made of it?

"THE WITNESS: Except for the examination and identification marks which I put on the envelope and on the package which was delivered to me.

"THE COURT: What—do you remember what identification marks were on the envelope when you received it?

"THE WITNESS: On the—if I can refer to my notes, I'll tell you what was written on the envelope at the time I received it.

'Auburn' was written on the envelope. 'C–99362, Mike Suiter, 10–24–73, Coffee DN' was written on the manila envelope. The manila envelope was sealed with clear plastic tape and the initials 'DN' along the seals of the envelope.

"THE COURT: State whether or not that envelope from its appearance, had been opened?

"THE WITNESS: No, sir, it had not, from its appearance.

"THE COURT: All right."

Mrs. Gladys Clark testified that she was Clerk of the Circuit Court of Coffee County and by virtue of holding that office she was ex-officio Clerk of the Inferior Court of Coffee County on December 11, 1973. She stated that she was present at the preliminary hearing of Noah Michael Suiter when numerous pills were introduced in evidence. She said that at the conclusion of the hearing she took custody of the envelope and the contents thereof and carried them to her office and sealed the envelope and put it in the vault in her office which had a combination lock. That only she and her Chief Deputy knew the combination to the vault lock. Mrs. Clark further testified that the envelope remained in the locked vault until she removed it and carried it to appellant's trial in Opelika. She said the envelope and its contents were in the same condition when she removed them from the

vault as they were when she locked them up after the preliminary hearing in Coffee County on December 11, 1973. After a voir dire examination the envelope and its contents were admitted in evidence.

Mr. Noggle was recalled as a witness for the state and identified the envelope and its contents being State's Exhibit One. He further testified that he recognized these by "my case number, the date on which I received the case and, also, by my initials."

From the record:

"THE COURT: Can you look at those and tell if the identification—the same identification marks on there that were on there when that was introduced in the Inferior Court of Coffee County?

"THE WITNESS: Yes, sir, appears to be the same identification.

"THE COURT: And your initials on that envelope?

"THE WITNESS: My initials are on the envelope and also on the—

"THE COURT: Chewing gum wrapper?

"THE WITNESS: Chewing gum wrapper."

Over objections of appellant that the chain of custody had been broken, State's Exhibit Number One, containing the envelope and its contents, was admitted in evidence.

Appellant offered the testimony of two witnesses to prove his good character and his good reputation for truth and veracity.

Appellant admitted selling Smith the drugs in question for $45.00 but only after Smith had asked him on twenty-five occasions to obtain drugs for him over a period of two weeks. His defense was entrapment.

It should be noted that appellant's testimony is in direct conflict with the testimo-

ny of Officer Smith that he had only three contacts with appellant. On the first contact appellant sold him some marihuana. The second contact concerned the sale and purchase of drugs but the deal was never consummated. The third and last contact was on October 24, 1973, when appellant sold him the amphetamines made the basis of this prosecution.

 There was no motion to exclude the state's evidence; there was no request for the affirmative charge; there were no specific exceptions reserved to the oral charge of the court to the jury. There was a motion for a new trial, but this motion was not designed to test the sufficiency of the state's evidence and no testimony at all was offered on the motion for a new trial. At the hearing legal arguments only were heard. In this state of the record nothing is presented for review. *Eady v. State,* 48 Ala.App. 726, 267 So.2d 516; *Goodman v. State,* 52 Ala.App. 265, 291 So.2d 358.

 The evidence as to the custody and possession of Exhibit One unequivocally shows there is no missing link in the chain of identification. Identification and continuity of possession were sufficiently established, affording ample assurance of the authenticity of the tablets and the analyses conducted by the toxicologist. *Green v. State,* 42 Ala.App. 439, 167 So.2d 694; *Dennison v. State,* 259 Ala. 424, 66 So.2d 552; *Lackey v. State,* 41 Ala.App. 46, 123 So.2d 186; *Jemison v. State,* 40 Ala.App. 581, 120 So.2d 748; *Aaron v. State,* 271 Ala. 70, 122 So.2d 360; *Powell v. State,* 47 Ala.App. 582, 258 So.2d 923.

In *Dennison,* supra, the Supreme Court said:

* * * "The preliminary proof identifying and describing the considered articles fully complied with the rule and under no sort of theory would the trial court have been warranted in refusing their admission." * * *

The above is fully applicable to the instant case.

In *Johnson v. State,* 36 Ala.App. 634, 61 So.2d 867, 869, this court stated:

"[E]ntrapment is not available as a defense to a person who has the intent and design to commit a criminal offense and who in fact does commit the essential acts constituting it, merely because an officer of the law, in his efforts to secure evidence against such person, affords an opportunity to commit the criminal act * * *."

To like effect are the holdings of our Supreme Court in *Boswell v. State,* 290 Ala. 349, 276 So.2d 592 and *Johnson v. State,* 291 Ala. 639, 285 So.2d 723.

We find no error in the record and the case is affirmed.

Affirmed.

All the Judges concur.