Pitts & Pitts, Selma, and Sheldon Fitts, Marion, for appellant.

158 So.2d 495

**Vernon EARLY**

**v.**

**STATE.**

**2 Div. 85.**

Court of Appeals of Alabama.

Nov. 19, 1963.

Richmond M. Flowers, Atty. Gen., and Joe Breck Gantt, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

Vernon Early appeals from a conviction of second degree burglary in the Circuit Court of Perry County. He was tried under an indictment containing two counts for first degree burglary of the home of Rebecca Williams.

The State's evidence tended to show that on September 22, 1962, at between 8:00 and 8:30 P.M., Rebecca Williams, a Negress, and her sixteen year old daughter, Gladys, had prepared to retire for the night and that Rebecca was attired in her undercloth-ing and Gladys, in her nightgown. Rebecca stated that she had turned out the electric light, lit her kerosene lamp, and was in bed and that Gladys was either in or standing near a bed when they heard someone call "Rebecca" twice from outside the house. They both testified that they recognized the voice as that of the appellant, Vernon Early, a white grocer to whom Rebecca had paid a bill that afternoon and for whom Gladys had worked for the previous twelve Satur-days selling hot dogs and barbeque sand-wiches.

The State contends that Early began knocking on the door but that neither Gladys nor Rebecca answered his calling or his knocking and that Gladys jumped under a bed while Rebecca sat up and blew out the kerosene lamp; that Early then went to a glassed and screened-in window and began breaking it with a flashlight, which Rebecca recognized as belonging to him and which shone on his face so that she recognized him; and that Rebecca and her daughter then slipped out of the "ram-shackled" house and ran across the ceme-tery lot adjoining their residence to a near-by woods where they stayed until around midnight.

According to the record, at the time of the incident Marie Green, a partially deaf woman, was in another unit of the same dwelling and she stated that she did not hear or see anything.

The women testified that, after leaving the cemetery, they went to their landlady's house where they stayed the rest of the night. In the morning they reported the incident to Mr. Riston Spence, Chief of Police of Uniontown, who testified that when he arrived at the house he found a torn screen, a broken window and that glass and dirt were on the bed and floor under the broken window. Rebecca corroborated his testimony in this respect. Gladys testi-fied that she examined the bed and there was no glass or dirt on it but that there was "a lot of glass on the ground". Officer Spence said that the dirt found on the bed and floor, though not "visible" footprints, resembled footprints.

The appellant presented the following witnesses:

Andrew Moore testified that he had been with appellant, at appellant's store and that they left together at about 8:15 P.M. on the night in question; that appellant drove him four or five blocks to Highway 80; and that he did not know where appellant went after that.

William L. Gebhardt testified that he saw the appellant at Cambell's Hillcrest Res-

taurant at about 9:00 P.M. on the night in question and that the appellant had already finished eating. Gebhardt stated that he stayed in the restaurant with appellant about thirty to forty-five minutes and then they went to Brown's Station.

Franklin Crandwall testified that he saw the appellant at the Chat and Chew Restaurant at Browns, Alabama, at about 10:30 or 11:00 P.M. on the night in question.

The appellant testified that he did not close his store until between 8:30 and 8:45 P.M. that night, and that Andrew Moore and his nephew were in the store at the time it was closed. He further corroborated the testimony of Mr. Gebhardt and Mr. Crandwall.

The court admitted into evidence the following letter addressed to "Rebecca Williams, c/o Gladys Williams, General Del –, Unionlown Ala" and dated "Sept. 12. th 62":

"Dear Gladys

Will write you a few lines to let you know that you are still in my heart. and you will always be. No one can change this. The law police & or any one but you. Even tho you may turn your back on me. I will still *Love* you. You mean more to me than any one in the world. We can make our dream come true if you will stick with me. I love you baby, so much Till my Hart is Broken to Pieces. You do not want to do this to me. I will make you Happy, you and I can have a wonderful time together, getting married does not mean that you will not have Fun as the married People is the Happiest People on Earth. That is if They are Happily married and you and I can be. So say you love me as you did before. We will both be happy.

I will do anything I can For you so Remember This. I want you all to come on back and get your groceries. No one can keep you all From This. The Reason I said what I did and the Reason I let you go, was because you were Breaking my heart. it is True your Mother lyed was what I was so mad about. I cant get mad at you because I love you, you mean so much to me, and always will I cant live without you Darline.

Rem the letters you wrote me? You said you couldn't live without me, so Please Darling Remember This you will never be sorry that you stuck with me. We will leave this Roten Place its no Place to live any way. You cant Trust your own Color. All will Deceive you. For their self. Baby please believe me. You know I love you. You know I will make you happy if you will let me. We will leave this Place. We dont have to stay here. There is much better Places in this world. You stick with me and I with you. You will be glad you did. in the End. No one can kill the *love* I have for you. I will die for you. believe me Darling. What more could you Expect. I want you all to come on and get your Groceries as you have in the past. Im still the same. *I Love you,* and want you to have Food. I dont want you to be Hungrey. I want to help you because I Love You. No one can change this. believe me Darling. Will close this letter but not my heart. Ancer this letter I will Inclose stamp. Just Put my Box No –355, U Town. Burn this letter after you have Red it over Twice.

Yours Forever
M. E."

Early denied writing or signing the letter and his sister together with his former wife testified that the letter was not in his handwriting. He identified the envelope as one of the kind he used to send "dun" letters for his grocery store.

The appellant contends that error was committed by the trial court when the letter, supra, was admitted into evidence over the timely objection of the appellant.

The State offered the letter and it was admitted into evidence after the examination of Gladys Williams, by whom the State contends it was received. The following testimony was elicited from the witness Gladys Williams by the State in an attempt to establish the genuineness and authenticity of the letter:

"Q. Now, previous to this time, September 22nd, had you received any letters from Mr. Early?

"A. Yes, sir.

"Q. Did * * *

"MR. FITTS: Your Honor, I'm going to object to any question like this along the lines of any letters. She's only a witness, and this charge is against breaking and entering into the house of Rebecca Williams. We're going to object to any testimony concerning any letters.

"THE COURT: I overrule.

"MR. FITTS: Exception

"Q. How many letters did you receive from Mr. Early?

"A. I think—four.

"MR. FITTS: We object. We object to the question and to the answer.

"THE COURT: Overruled.

"MR. FITTS: Exception.

"Q. We offer this for identification as State's Exhibit Number 1. An envelope—the paper—and another envelope on the inside.

"(whereupon said envelope, papers and another envelope inside was marked State's Exhibit Number 1 for identification)

"Q. Have you ever seen that letter?

"THE COURT: Now, wait just a minute. You are handing her what?

"Q. State's Exhibit Number 1 for identification.

"THE COURT: All right.

"Q. Have you ever seen that before?

"A. Yes, sir.

"Q. Is that the letter you gave to the police in Uniontown?

"A. Yes, sir.

"Q. Who is that letter addressed to?

"A. To me.

"Q. Did you get it through the mail?

"A. Yes, sir.

"Q. And on the inside, was there another envelope in there?

"A. Yes, sir.

"Q. Is that the envelope that was in there? (Indicating)

"A. Yes, sir.

"THE COURT: When you say 'on the inside', do you mean on the inside of the envelope that the letter came in?

"Q. On the inside of the envelope marked State's Exhibit Number 1 for identification, yes, sir.

"THE COURT: (to the witness) On the inside of the envelope that the letter came in, was there another envelope inside?

"A. Yes, sir.

"Q. And who was that letter addressed to?

"A. To Mr. Early.

"Q. What's the box number?

"A. Post Office Box 355.

"Q. What town?

"A. Uniontown.

"THE COURT: You asked her, Mr. McLeod, who that letter was addressed to. As I understand, that's not a letter, it's an envelope.

"Q. An addressed envelope. And is this the letter, two sheets of paper, that was inside this envelope?

"A. Yes, sir.

"Q. Can you read and write?

"A. Yes, sir.

"Q. Will you read that?

"MR. FITTS: We're going to object, Your Honor.

"THE COURT: Wait, you haven't introduced it. Do you offer it in evidence?

"Q. Well I've got it marked for identification.

"THE COURT: Yes, but you haven't offered it in evidence.

"Q. I offer it in evidence as State's Exhibit Number 1.

"THE COURT: Now, State's Exhibit Number 1 will be the envelope you say the latter came in—

"Q. Envelope, the letter itself, and the envelope inside.

"THE COURT: And the addressed envelope that was inside.

"Q. Yes, sir.

"THE COURT: Three items. The envelope it came in, the letter, and an addressed envelope on the inside.

"Q. Yes, Sir.

"THE COURT: Now, you offer it in evidence?

"Q. Offer it in evidence.

"THE COURT: All right. Now, let me see the letter. (Reads letter)

"Q. Gladys, you testified that you got three other letters besides this one from Mr. Early. Is that true?

"MR. FITTS: I object to that. There's been no testimony in here about any other letters.

"Q. I asked her that question a little while ago and she said she got four from him.

"THE COURT: Yes, Sir. Overruled.

"Q. Did you ever answer any of those letters—did you ever write him back?

"A. Yes, sir."

*    *    *    *    *    *

"MR. FITTS: May it please, Your Honor, we're going to object to this letter. It's irrelevant; it's immaterial; it has nothing to do with the case. Mr. Early was brought up here for breaking and entering the house of one Rebecca Williams and this has nothing whatever to do with this case. It's only prejudicial; it's introduced for that entirely, and we say that the letter has not been properly identified. It's not in the same condition as when she got it. There's other writings on it, and for those reasons, Your Honor, we object.

"MR. McLEOD: I'll agree that what the officers wrote on here will have to be marked off.

"Q. [Mr. Fitts] I'll object to that, Your Honor. If the officers wrote it on there, I'm going to object to it.

"MR. McLEOD: Well, they did do it. We'll take it off.

"Q. [MR. FITTS] I don't know that they wrote it on there. I'm objecting to it.

"THE COURT: What is it you're objecting to?

"Q. [MR. FITTS] I'm objecting to him saying that he'll take that off of there. I'm further objecting to this letter being introduced as evidence on those grounds. Now, because a letter comes to a person in one state and it's brought here before the Court to be introduced in a different state and

it's not accounted for, I'm going to object to it."

"THE COURT: Well, Mr. McLeod, I don't think the envelope with that on there is admissible unless you can somehow cover that part up before it's put before the jury.

"MR. McLEOD: I can ink it out, your Honor.

"THE COURT: Well, I don't know whether you can ink it out. Have you got something you can paste over it?

"MR. McLEOD: Yes, sir, we'll paste something over it.

"THE COURT: (To the Clerk) Do you have any tabs that would cover that?

"Q. [MR. FITTS] Well, if it please Your Honor, I'm going to object to any altering of the State's Exhibit Number 1 before he offers it in evidence.

"THE COURT: All right, sir. I'll overrule the objection.

"Q. [MR. FITTS] Exception.

"THE COURT: I want the record to show that Mr. Fitts objects to what Mr. McLeod is doing to the envelope; further let it show that all he is doing is pasting something over some writing that is on the envelope that was not on it at the time this girl says she got it.

"Q. [MR. FITTS] And I'm objecting to placing anything over the writing on the envelope and I'm objecting to the envelope being offered in evidence and I'm objecting to anything that was in the envelope being offered in evidence. It's irrelevant, immaterial, and has nothing whatever to do with this case. It is being offered solely and entirely to prejudice this jury.

"THE COURT: All right, sir. Now, with the writing covered by those pieces of adhesive tape so they cannot be read, the Court will overrule the objection and let that exhibit be admitted.

"(Whereupon said letter, envelope, and another envelope, 3 items, were accepted in evidence and marked States Exhibit No. 1)

"Q. [MR. FITTS] Exception."

The Attorney General relies strongly on the case of Clemons v. State, 17 Ala.App. 533, 86 So. 177, to support the contention that the letter was admissible into evidence without a further showing of its authenticity or genuineness. In Clemons v. State, supra, the prosecutrix testified as follows:

"I got letters from him, lots of them. I got letters before he had intercourse with me. Some of them are here. That is one of the letters and that is the envelope it came in."

With that statement, tending to identify the letter, the court, over the objection of the defendant, allowed the letter to be put in evidence. On appeal to this court, the defendant contended that the trial court admitted the letter without proof that he sent it or proof as to his handwriting. This court in sustaining the trial court's ruling said:

"The witness testified emphatically that she received the letter from the defendant, and if the defendant had shown on cross-examination that she did not know whether the defendant wrote the letter or could not testify as to his signature, then the objections would have been availing; but in the way the matter is presented the trial court did not commit any error in permitting the introduction of the letter."

Although the Clemons case, supra, at first glance seems similar to the instant case, there is a gross contrast, for a careful examination of the testimony of the witness, Gladys Williams, discloses that at no time prior to the introduction of the letter into evidence did she specifically testify that she received the letter introduced on trial from the defendant, Vernon Early.

■ .This court is of the opinion that in appellant's case the letter identified as Exhibit No. 1 was erroneously admitted into evidence by the trial court, for the overwhelming weight of authority in Alabama establishes the doctrine that where a letter is received in due course, it is not admissible as evidence against the purported sender thereof, without proof that he sent it, or proof of his handwriting, unless the same is in reply to a communication sent to him by the sendee thereof. O'Connor Mining & Manufacturing Co. v. Dickson, et al., 112 Ala. 304, 20 So. 413; Louisville & Nashville R. Co. v. Britton, 149 Ala. 552, 43 So. 108; Butterworth & Lowe v. Cathcart, 168 Ala. 262, 52 So. 896; Rike v. McHugh & Groom, 188 Ala. 237, 66 So. 452; American Standard Life Ins. Co. v. Tolliver, 25 Ala.App. 363, 146 So. 625; McClendon v. State, 243 Ala. 218, 8 So.2d 883.

We fail to here observe proof against Early of any of the legal requisites tending to establish the authenticity or genuineness of the letter.

■ Appellant contends that the trial court committed error in overruling the defendant's objection to the following portion of the solicitor's closing argument:

"MR. McLEOD: —he wants to change his color and love somebody else.

"MR. FITTS: If it please Your Honor, I want to object to that.

"MR. McLEOD: Well, she is another color.

"MR. FITTS: You said he wanted to change his color. I object to such argument as that before this jury.

"THE COURT: That's simply his personal opinion of what he gets out of these facts in this case, Mr. Fitts. I'll overrule the objection, so this jury can see whether or not they agree with Mr. McLeod or not. They've listened to this evidence."

This remark made by the solicitor in the fervor of argument is improper and creates, in the opinion of this court, prejudice against the defendant sufficient to impair the fair and impartial trial to which he is entitled and of which he must be assured. Moore v. State, 30 Ala.App. 552, 9 So.2d 146; Pointer v. State, 24 Ala.App. 23, 129 So. 787; Blue v. State, 246 Ala. 73, 19 So. 2d 11.

For the errors herein pointed out, this case is hereby

Reversed and remanded.