323 So.2d 109

**John C. MULLINS, alias**

**v.**

**STATE.**

**5 Div. 204.**

Court of Criminal Appeals of Alabama.

March 4, 1975.

Rehearing Denied April 1, 1975.

Walker, Hill, Gullage, Adams & Umbach, Opelika, for appellant.

William J. Baxley, Atty. Gen., and J. Donald Reynolds, Sp. Asst. Atty. Gen., Montgomery, for the State.

HARRIS, Judge.

Appellant was indicted, tried and convicted for selling marihuana. The jury declined to assess a fine and the trial court sentenced appellant to fifteen (15) years in the penitentiary. At arraignment appellant, in the presence of retained lawyer, pleaded not guilty. This same lawyer represented appellant at trial and throughout all proceedings in the trial court and also represents him on appeal.

Before trial appellant filed a motion to be treated as a youthful offender under the provisions of Title 15, Section 266(1), Code of Alabama 1940, as last amended. The trial court summarily overruled and denied this motion without complying with the mandatory provisions of this law.

*Morgan v. State,* 291 Ala. 764, 287 So.2d 914. On October 29, 1974, we remanded this case for compliance with the above code section.

The trial court immediately referred appellant's application for treatment as a youthful offender to a probation officer to conduct an investigation and file his report. A hearing was had on November 19, 1974, and testimony was heard orally before the court.

Appellant testified at this hearing and said he was nineteen (19) years of age and was a junior at Auburn University and would be a senior the next quarter; that he was living with his parents and had not missed any time from his college work.

Four Auburn College professors testified in appellant's behalf. They all testified that he was a boy of good character and had an excellent reputation. His attendance record was good and he was an intelligent student and had never demonstrated a discipline problem; that if he was given an opportunity he would definitely have a place in society and would be an honest and productive citizen; that to send a boy like appellant to the penitentiary would have a most detrimental effect upon his after life.

Both parents testified that appellant was a good student; that when he was in summer school he made the highest grades possible—three-point average out of a possible three points; that during one winter quarter he dropped to 2.83 out of a possible 3, but he changed one course and went back to a three-point average.

The reports of the two probation officers were introduced in evidence over appellant's objections and are as follows:

"Court's Exhibit No. 1
11–17–74
RS
ARREST RECORD OF JOHN C. MULLINS   CC #504
W.M. – 19
D.O.B. 9–10–55    Sale of Marihuana

"Lee County Juvenile Court

| | | |
|---|---|---|
| "7–13–71 | Sale and Possession of Heroin<br>Sale and Possession of LSD | Released to Parents<br>on $10,000 Bond. |
| 8–3–71 | Burglary of Vending Machines (John and another youth took approximately $16 from coin changer in basement of Samford Hall) | Parents paid restitution of $78.00 |
| 9–14–71 | Declared Delinquent as result of the three charges listed above. | 1 year probation |

"Auburn Police Dept.

Arrests Prior to Conviction:

| | | |
|---|---|---|
| 2–27–73 | Reckless Driving | $36.50 Fine |
| 3–15–73 | Speeding | 21.50 |
| | Possession of Marijuana | No billed |

Arrests Subsequent to Conviction:

Check

| | | |
|---|---|---|
| ~~7–27–73~~ | ~~Fighting~~ | ~~Disposition unknown~~ |
| 8–10–74 | Speeding | $21.50 fine |

"/s/ Edward M. George
Edward M. George,
Parole and Probation Supervisor"

"STATE OF ALABAMA
BOARD OF PARDONS AND PAROLES
PAROLE AND PROBATION OFFICE

Opelika, Alabama
November 4, 1974

"Hon. L. J. Tyner
Judge, 37th Judicial Circuit,
Opelika, Alabama.

Re: John Clement Mullins
W.M. – 19 (DOB 9–10–55)
Lee County Circuit Court #504
Sale of Marijuana

"Dear Judge Tyner:

Reference is made to our conversation on 11–4–74 in which you requessted a records check on the above described individual.

Mullins first came to the attention of the Law Enforcement Authorities when as a Juvenile he was arrested by the Auburn Police Department on 7–13–71 for Possession and Sale of Heroin and Possession and Sale of LSD.  Mullins was found guilty in Juvenile Court and was placed on one year probation on 9–13–71.

The subject successfully completed his probation and was released from supervision on 9–16–72.

Mullins had the following Adult Criminal Charges:

| Auburn Police | 2–27–73 | Reckless Driving | $36.50 |
| Dept. | 3–15–73 | Speeding | 21.50 |
| | | Possession of Marijuana | No billed |
| | 7–27–73 | Fighting | No. disp. shown |
| | 8–10–74 | Speeding | $21.50 |

I hope the above information serves your purpose, and if I can be of any further help please don't hesitate to ask.

Sincerely,

Jim V. Lord
Parole and Probation Supervisor II
Opelike, Alabama.

JVL/mn"

———◆———

At the conclusion of the hearing the court decreed that "the defendant should not have been tried under the ꜜYouthful Offenders Act and was properly tried as an adult in this court, and that he should not be again tried under the Youthful Offenders Act."

At this time we are not sure that we have a right to review the *discretion* vested in trial courts when applying the Youthful Offenders Act. Had we been sitting as a trial judge in this case, our decision might have been different. Even had we decided to try him as an adult we certainly would not have meted out a sentence of fifteen years in the penitentiary to a young man who seemed to have had a promising future in our mixed-up society.

We turn now to the merits of this case.

Robert M. Patterson who had been employed with the State Department of Public Safety for nine and a half years was the first witness for the state. He testified that he lived in Huntsville, Alabama, but for the past two years he was on special assignment as a State Narcotics Investigator. He was asked how he dressed and with whom he associated with when he was doing undercover work and he said,

"I dress according to the people that I am working with, I dress similar to the people that I am trying to get in with, and I am trying to get in with, infiltrate, people who traffic in illegal drugs."

He testified that for about fourteen (14) days from February, 1973, to the middle of April, 1973, he worked in the Auburn-Opelika area of Lee County with an informer named Jimmy Stanfield; that in order to throw people off guard, Stanfield would introduce him as a man Stanfield met while an inmate of Draper Prison.

He further testified that on the night of February 17, 1973, he was driving an unmarked state car on Magnolia Street in the direction of a place called Pasquales in Auburn, Alabama, with Stanfield as his passenger. They observed two boys walking away from Pasquales and Stanfield rolled the window down on the passenger's side and shouted to the two boys to come

over to the car. They walked to the side of the car where Stanfield was sitting but Patterson could not hear the conversation. It was a very cold night and Paterson invited them to get in the car. They got in the backseat of the car and Stanfield asked them if they knew where they could get some good pot. These boys turned out to be appellant, who was 17 years old at that time, and one Greg Glass, who was 15 years of age. Appellant and Glass started naming off different brands of marihuana that could be had and the price of each brand. They mentioned the names of Mexican, Columbian, Brazilian, and some domestic weed.

Patterson asked both appellant and Glass if they had the marihuana on them and they said no. He then asked them how long it would take them to get it and appellant said it would take about three (3) minutes. Patterson asked the price of the Mexican brand and Glass said $16.00. Patterson gave Glass $16.00 and both boys got out of the car and started walking in the direction of Pasquales. Both boys returned to the car in five minutes and got in the backseat. Appellant leaned over and placed a lid on the frontseat of the car saying, "Here it is." Patterson picked up the package and examined it, looked at it, smelled it and placed it in his left front pocket.

Patterson further testified that he kept the marihuana in his pocket until he got back to his motel room where he placed it in an envelope and wrote the names "John and Greg" on the front of the envelope and kept it in the room with him until around noon the next day when he turned the envelope over to Sergeant Elbert J. Gosdin, who came to his room in the Holiday Inn.

Sergeant Gosdin was also a State Trooper with the Department of Public Safety where he had been so employed for thirteen years but had been assigned to drug investigative work since 1971. He was stationed at Opelika. He testified that he received a white envelope from Sergeant Patterson at the Opelika Holiday Inn and on the outside of the envelope were the names of "John and Greg"; that he opened the envelope and observed the contents and thought it was marihuana. He put the contents of the white envelope into a larger manilla envelope and, "I wrote Greg and John, white males, Lee County, I put the date and I put a plastic bag containing brownish green vegetable matter on the front and then I put on the back, I wrote along the long seal of the envelope Sergeant E. J. Gosdin, P. O. Box 2368, Opelika, and down on the bottom I put my initials on the bottom seal and then I put tape over all of the writing with the exception of received E. F. G., 2/18/73, 12:30 P.M."

This witness further testified that he put the manilla envelope, after it was sealed, in the trunk of his car and delivered it at a later time to Mr. Taylor Noggle at the Toxicology Office in Auburn, and that at the time he delivered it to Mr. Noggle it was in the same condition it was in when he placed it in the trunk of his car.

Mr. Taylor Noggle testified that he was a toxicologist with the Alabama Department of Toxicology and Criminal Investigation in Auburn. At this point counsel for appellant stipulated that Mr. Noggle was an expert with the Department.

This witness testified that on February 22, 1973, Sergeant E. J. Gosdin delivered to him "a sealed, State of Alabama, Department of Public Safety, manilla envelope which contained a clear plastic bag holding a green vegetable matter." He further testified that when he opened the envelope he found it contained a greenish-brown vegetable matter.

Mr. Noggle made a chemical examination of the contents of the plastic bag and determined it to be marihuana. After making this determination he returned the marihuana to the clear plastic bag and into the manilla envelope, which Sergeant Gos-

din delivered it to him in, and kept it in his possession until the day of the trial. The proper predicate was laid for the introduction of the envelope and the contents in evidence. It was admitted over appellant's objections.

At the conclusion of the state's case, appellant made a motion to exclude the state's evidence on several grounds: (1) that the state had failed to connect the defendant with the sale of marihuana, (2) the defendant received no consideration from the alleged sale, and (3) that the undercover agent entrapped the defendant into the commission of the offense. There was quite a colloquy between the court and appellant's attorney concerning the defense of entrapment after which the court overruled the motion to exclude the state's evidence.

The testimony adduced on behalf of appellant was to the effect that he did not even see Sergeant Patterson on the night of February 17, 1973, and, therefore, he did not participate in the sale of marihuana on that occasion, or any other occasion; that the first time he ever saw Patterson was at Police Headquarters on the night of May 1, 1973, when he was arrested. Appellant admitted that he saw Greg Glass at Pasquales on the night of the alleged sale of marihuana, but that Glass left the place with three girls and that appellant went to ride in his car with another boy. This boy supported his alibi that they rode around together by themselves and at no time was Greg Glass in the company of appellant; that when they got in appellant's car they saw Greg Glass walking from Pasquales going to Haley Center to watch "The Alamo" on television.

Eight witnesses testified as to appellant's good character and excellent reputation.

■ The conflicting evidence made and presented an issue for the jury to resolve and they resolved it against appellant. See *Peppers v. State,* 53 Ala.App. 695, 304 So. 2d 39.

■ A fact may be established as firmly by the testimony of one witness as by the testimony of an entire community. *Nabors v. State,* 82 Ala. 8, 2 So. 357; *Gray v. State,* 38 Ala.App. 508, 88 So.2d 798; *Smith v. State,* 53 Ala.App. 27, 296 So.2d 925.

Appellant strenuously insists that the state's evidence failed to connect appellant to the alleged sale of the marihuana. We do not agree. According to the testimony of Sergeant Patterson appellant delivered the marihuana to him personally after he gave $16.00 to Greg Glass while both Glass and appellant were in the backseat of the car he was driving.

■ The evidence as to the custody and possession of the envelope and its contents sufficiently established there was no missing link in the chain of identification. The identification and continuity of possession were sufficiently shown, affording ample assurance of the authenticity of the envelope and its contents and the analysis conducted by the Toxicologist. *Powell v. State,* 47 Ala.App. 582, 258 So.2d 923; *Green v. State,* 42 Ala.App. 439, 167 So.2d 694; *Dennison v. State,* 259 Ala. 424, 66 So.2d 552; *Oury v. State,* 53 Ala.App. 240, 298 So.2d 661.

In *Dennison,* supra, the Supreme Court said:

"* * * The preliminary proof identifying and describing the considered articles fully complied with the rule and under no sort of theory would the trial court have been warranted in refusing their admission. * * *"

The above is fully applicable to the instant case.

One of the grounds appellant moved to exclude the state's evidence was that he was entrapped, saying, "I believe the State's testimony itself shows entrapment, that is, the State through their own testimony have proved that they entrapped the defendant

and therefore the evidence should be excluded on that also."

The court charged the jury on the law of entrapment and appellant objected to the charge and reserved an exception even though he injected entrapment into the case himself.

On the law of entrapment, we take the following from *Boswell v. State,* 290 Ala. 349, 276 So.2d 592, at page 599:

"In *Johnson v. State,* 36 Ala.App. 634, 636, 61 So.2d 867, 869 (1952), our Court of Appeals stated:

"'[E]ntrapment is not available as a defense to a person who has the intent and design to commit a criminal offense and who in fact does commit the essential acts constituting it, merely because an officer of the law, in his effort to secure evidence against such person, affords him an opportunity to commit the criminal act * * *.'

"There is no doubt that the course of conduct leading to the criminal activity began with the request by Owensby, the customs agent, to buy marijuana. The defendant sold the marijuana in response to this request. However, the agent's conduct, merely affording defendant the opportunity to commit a criminal act, falls short of what is necessary to constitute entrapment. *Johnson v. State,* supra. See also *Brewer v. State,* 23 Ala. App. 100, 123 So. 86 (1929), in which officers induced defendant to sell them liquor, then prosecuted him for violating prohibition laws. No entrapment was found.

"In this case the entrapment issue was submitted to the jury with unusually full and fair instructions from the trial judge. The jury found no entrapment. We hold they could properly so find."

Counsel for appellant in his closing argument to the jury said, "I want to point out to you, now one matter of scripture and that is this, I am reading Second Corinthians the Thirteenth Chapter."

The state objected to counsel reading the Bible to the jury as it was not evidence in the case.

From the record:

"MR. WRIGHT: Your honor I hate to interrupt the argument, but I think that it is improper for Mr. Gullage to read from the scripture, here, that is not in evidence in this case and it has nothing whatsoever to do with this case. And I think it's improper argument to read from the scripture.

"THE COURT: Well, Jesus Christ himself said, render unto God the things that are God's and render unto Caesar the things that are Caesar's. Now, I interpret that from the Bible to mean that when there are laws of the land a person is supposed to obey the laws of the land and render unto God the things that are God's, But render unto Caesar, that is the Government, the things that the Government has ordered and ordained.

"MR. GULLAGE: Your Honor, of course, I take exception to your remarks but I can't disagree with you.

"THE COURT: Well, do you disagree with Jesus Christ Himself, who said render unto God the things that are Gods, (sic) and render unto Caesar the things that are Caesar's?

"MR. GULLAGE: No, sir, I don't disagree with it I just take exception to the remarks of the Court—

"THE COURT: Well, now, maybe you are not as busy as I am, I work Saturdays, and Sundays, and nights, and every other time, and don't have a chance to go to Church, I'm down in my office ever (sic) Sunday—

"MR. GULLAGE: Your Honor, I'm not doubting what you say about that, I just except to the remarks by the Court to the jury.

"THE COURT: All right. Now, go ahead and read the bible to the jury, I'm a firm believer in Jesus Christ myself."

 Counsel for appellant had a right to read from the Bible in his argument to the jury. In *Poole v. State*, 292 Ala. 590, 298 So.2d 89, the Supreme Court held that criminal trials are adversary proceedings and argument of counsel should not be so restrictive as to prevent reference, by way of illustration, to historical facts and public characters, or to principles of divine law or biblical teachings.

The same principles were enunciated by the late Mr. Justice Simpson, while he was serving on the Court of Appeals, in the case of *Kabase v. State*, 31 Ala.App. 77, 12 So.2d 758.

In *Dennison v. State,* 17 Ala.App. 674, 88 So. 211, Presiding Judge Bricken wrote:

"The trial judge, as a natural consequence of his position and the many duties devolving upon him, is necessarily vested with much discretion in the conduct of the trial of causes, and, unless it clearly appears that there has been an abuse of this discretion, appellate courts will not interfere to control such discretion, but will presume that one occupying so important a position as that of circuit judge will accord to all litigants in his court the fair and impartial trial provided for in the Constitution of this state. That a trial judge wields a great influence upon the jury cannot be questioned, for it is their duty to follow his instructions as to the law. So, whenever he expresses an opinion on any disputed fact, or of the character of a witness, or compliments one attorney at the expense of another, or uses language which tends to bring an attorney into contempt before the jury, or uses any language or makes any intimation which tends to prejudice them, he commits an error of law, which would, of necessity, effect a reversal of the judgment and a remandment of the cause. In the instant case we are not prepared to say that the alleged injurious language of the court addressed to appellant's counsel was of the character to prejudice the attorney before the jury or to injuriously affect the substantial rights of the defendant. * * *"

 We do not believe the language used by the trial judge can be construed as casting any reflection upon counsel for appellant or demeaning him in any manner before the jury. The comment of the judge would probably have been best left unsaid but we do not believe appellant's rights were prejudiced.

We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.

Affirmed.

All the Judges concur.