A jury found defendant guilty of an assault upon a named and identified woman with the intent forcibly to ravish her; the court sentenced him to imprisonment for fourteen years.
The victim, who the record indicates is a young lady in the most sublime sense of that word, was a student at the University of Alabama and was in the vicinity of a girls dormitory, where she roomed, about 9:00 P.M. Sunday, August 24, 1975, when she was suddenly and violently thrown into the front seat, on the passenger's side, of an automobile, by a man standing beside the automobile, whom she was never able to identify positively but who, she (white) said, was "black" and "kinda big, and he had big forearms." In the driver's seat at the time was another black man; the victim could not identify defendant as either of the two men. She repulsed her assailant by directing her feet to his midsection and propelling her body toward him as he was getting in the automobile; she scrambled out of the automobile and freed herself. Her attacker then entered the automobile and closed the door. Others heard the commotion; the automobile drove away; police were on the scene almost immediately. The victim described the automobile as a dark Cadillac with a vinyl roof half-white and a National Guard tag on the car.
Within about half an hour after the attack, officers apprehended the defendant driving such an automobile in the vicinity of the crime. Officers recognized him as one who had been driving the same automobile in the vicinity of the crime a short while before the attack. There was another black male in the automobile at the time the automobile was stopped. Both were detained and questioned. Appellant said that he and the other man had been at a theater in downtown Tuscaloosa and had driven out to the University to see a friend. After being questioned and indicating no *Page 814 
knowledge of any assault, they were released.
The victim of the assault lost a contact lens in the encounter. She reported this to the police, and soon after she had returned to her dormitory and had regained to some extent her composure, she and the officers went to the scene of the struggle and searched carefully for the contact lens, but it was not found.
On August 28, the automobile was searched at the place where appellant's wife worked, pursuant to a search warrant issued by an ex-officio judge of the Tuscaloosa County Court. There was evidence that prior to the crime the automobile had been bought by defendant from a member of the National Guard. The search warrant was served on appellant's wife. The search disclosed a contact lens on the front seat of the automobile.
Defendant offered no testimony on the trial of the case.
Many objections were made by defendant to questions relative to the identity of the contact lens. Appellant argues that an adequate chain of possession and custody of the contact lens was not shown by the evidence and that the court erred in overruling defendant's objection to the introduction of the lens into evidence. Appellant contends that there were two breaks in the chain of custody: (1) that there was no testimony that Ms. Michelle Minolie, who testified as to a lens, actually received the same lens that the police had found in the automobile, and (2) the lens was left lying on a counter in the court room, in the custody or possession of no particular person, while the trial court was adjourned for lunch, and was thereafter admitted in evidence. Officers Mills and Shaw of the University of Alabama Police Department, who found the lens in defendant's automobile, testified that thereafter the lens was placed in the evidence locker at the University Police Department, to which no one had access but such officers. They were intensively and extensively interrogated by attorneys, particularly defendant's attorney, as to the possibility that someone could have substituted another lens for the lens found in the automobile, but taking their testimony as a whole, there is no basis for any reasonable conclusion that such occurred. There was no other contact lens in the evidence locker. There was no evidence indicating that the contact lens was ever in the hands of anyone out of the presence of one of such officers, except perhaps the District Attorney or one of his assistants, for an examination of it about one week before trial, and perhaps the court reporter or some of the attaches of the court trying the case. Even the possibility of a substitute for, or a material change in, the lens between the time of its finding and its admission in evidence becomes infinitesimally small and remote in view of the nature and size of the object and of the difficulty of anyone's making a switch or change that would result in the making of such article to correspond with the lens made for the victim by her optician in another city. We find no error in the admission of the lens in evidence. To warrant the reception of an object in evidence against an objection that an unbroken chain of custody has not been shown, it is not necessary that it be proved to an absolute certainty, but only to a reasonable probability, that the object is the same as, and not substantially different from, the object as it existed at the commencement of the chain. Dennison v.State, 259 Ala. 424, 427, 66 So.2d 552; Mullins v. State,56 Ala. App. 460, 323 So.2d 109; Jemison v. State, 40 Ala. App. 581,120 So.2d 748.
Ms. Minolie was allowed to testify, over the objection of defendant that she was not properly qualified, as to the power and diameter of the contact lens introduced by the State into evidence. Ms. Minolie was employed by a Tuscaloosa ophthalmologist as a contact lens fitter and the operator of a lensometer. She had previously taught at Tuscaloosa High School; she had a B.A. degree from San Francisco State University. She was vigorously questioned by defense counsel and manifested by her answers that her testimony as to the power and diameter of the lens tested by her *Page 815 
pertained to the particular work in which she was engaged and for which she was employed by the ophthalmologist. She did not testify on direct examination as to any matter out of the field of her employment. She unquestionably had acquired knowledge beyond that of ordinary witnesses on the subject as to which she testified. The objections to her testimony were not well taken.Daniel v. State, 31 Ala. App. 376, 17 So.2d 542; Bufkins v. State,20 Ala. App. 457, 103 So. 902, cert. denied, Ex parte Bufkins,212 Ala. 638, 103 So. 906; Reynolds v. State, 29 Ala. App. 139,193 So. 192.
Appellant complains of two instances of action by the trial court in overruling defendant's motion for a mistrial by insisting that the trial court was in error in inquiring of the jury whether they were prejudiced by what had occurred. Appellant insists that whether a mistrial should be declared is the responsibility of the judge and not the jury. He is correct, but we do not consider that the trial judge was leaving to the jury a decision as to what the court should do. The record is to the contrary. As we view it, the record indicates that the question of the jury by the trial judge was in the nature of extra precaution on his part to assure a trial free of prejudice. It is clear that the trial judge ruled in accordance with his own opinion that no prejudice to defendant had occurred in either instance and that the motion for a mistrial should be overruled.
This brings us to the only remaining contention of appellant, an occurrence during the argument of counsel for the State as follows:
 "MR. ANDRES: . . . Freddie Blakely knew exactly what was going on. They had planned it during the time they were at the moving seeing — I believe Jimmy Mills said `Black Mamma White Mamma.' They probably decided while they were there at the movie and then drove down to the University and cruised around until they could . . .
 "MR. McCAIN: Your Honor, we're going to object at this time and move for a mistrial on the grounds that Mr. Andres has stated the name of a movie that has not been put into evidence, possibly the prejudicial name of a movie.
 "Absolutely no evidence has been put before this Court, and it's an obvious . .
 "THE COURT: Did one of the officers say he told them they had been to a movie?
MR. McCAIN: A movie, Your Honor. "THE COURT: A movie?
 "MR. ANDRES: If I was incorrect in stating the evidence, Your Honor, I apologize to the Court.
 "MR. McCAIN: We don't think an apology would clear this.
"THE COURT: Well, the motion is denied.
 "The defense is due an exception to the Court's ruling."
In a preceding portion of the argument of counsel for the State, he had said:
 ". . . It's really been a pleasure for me to work with the people I've worked with in this case. I've worked with Jimmy Mills since the date of August 25th, the day after this happened, when we had this lineup."
The parties on appeal are not in disagreement as to the evidence in the case. They agree that Officer Mills testified that defendant told him that he and his companion had been to a movie just before they proceeded to the University campus; that Officer Mills did not testify that the movie was "Black Mamma White Mamma," and that there was no evidence in the case to that effect. Long before the surge of preemptive federal laws, regulations and judicial decisions pertaining to civil rights, the courts of Alabama zealously and assiduously guarded against injustice toward a litigant because of his race. That such dedication to duty was at times more pronounced in the appellate courts than in the trial courts is probably due to the fact that, as seemingly happened in this particular case, the questionable incidents occurred with such suddenness and lack of warning and in such unforeseeable form, that the parties *Page 816 
concerned at the time, including the trial court, could not then give them the plenary consideration to which they were entitled. Ofttimes the injection of prejudice, sometimes invidiousness, was intended; at others it was not. Irrespective, however, of the question of design, the settled principle has been that no litigant, whether the State or other party, will be allowed to profit by an appeal to one race at the expense of a member of another and no greater ban can be placed upon improper forensic dispute than that which prohibits argument calculated to arouse members of one race against another merely because he is a member of another race. Tannehill v. State, 159 Ala. 51, 48 So. 662
(1909); James v. State, 170 Ala. 72, 54 So. 494 (1911); Moultonv. State, 199 Ala. 411, 74 So. 454 (1917); Johnson v. State,212 Ala. 464, 102 So. 897 (1925); Simmons v. State, 14 Ala. App. 103,71 So. 979 (1916); Bailum v. State, 17 Ala. App. 679, 88 So. 200
(1921); Green v. State, 22 Ala. App. 56, 112 So. 98 (1927); Earlyv. State, 42 Ala. App. 200, 158 So.2d 495 (1963).
It is not to be gainsaid with reason that references to race in judicial proceedings are at times necessary. If necessary and benign, they furnish no just ground for complaint. If unnecessary and malignant, they cannot be condoned. When serious questions are raised whether they are one or the other, patterns in other cases are sometimes helpful, but not conclusive, unless the circumstances of the previous case are the same as in the case under consideration, which seldom they are. We must look closely at the circumstances of this particular case to determine whether error prejudicial to defendant occurred in that part of the trial quoted above.
It is not for us to assay the contents of the movie, "Black Mamma White Mamma." We don't know whether any of the jurors ever saw it or knew anything about it. But we can conceive of no title to a movie, which would ever pass today's liberal acceptance of what can be shown to the public, that would be more offensive to some jurors than the title "Black Mamma White Mamma." We can conceive of no other publicly acceptable title to a movie that is more calculated to arouse antipathy, deep-seated in the hearts and minds of some, against miscegenetic conduct. There can be no reasonable question as to the applicability in the title of the word "Mamma," which until recent years occupied only the loftiest of human pedestals, as the appellation of a child for its mother, and had not been denigrated to slang of a sensual and even sexual nature.[1]
Notwithstanding our expressed feeling as to the impropriety of the particular argument, we are not saying that it would not have stood the test of legitimacy if there had been evidence to support it. It would have then been based on the deduction of counsel from the evidence, as to which there is broad latitude. But not so as to argument of counsel of a substantially injurious nature that constitutes an assertion of fact of his own knowledge that is not based upon the evidence. Smith v. State, 282 Ala. 268, 210 So.2d 826; Eaton v. State, 278 Ala. 224, 177 So.2d 444;Madison v. State, 55 Ala. App. 634, 318 So.2d 329, cert. denied294 Ala. 764, 318 So. 337; Taylor v. State, 54 Ala. App. 353,308 So.2d 714; Smith v. State, 51 Ala. App. 527, 287 So.2d 238, cert. denied, 292 Ala. 750, 289 So.2d 808.
There was no effort made to heal the wound resulting from the improper argument. To some extent there was a duty in this respect upon defendant's counsel; to some extent it was upon the court; to some extent it was upon State's counsel. Defendant's counsel objected and moved for a mistrial. The trial court overruled the motion and gave defendant an exception. The court overruled the motion but made no ruling as to defendant's objection, which perhaps defendant's counsel should have separately made. State's counsel commendably apologized but stated that he did so if he "was incorrect in stating the evidence." *Page 817 
We do not think that either the trial judge, State's counsel or defendant's counsel is to be blamed for the manner in which the matter was handled by the trial judge, the action of State's counsel when it appeared to him that he had probably mistakenly endeavored to refer to evidence, or defendant's counsel in what would have likely bewildered any attorney under the circumstances. Defendant's counsel was not required to have known about "Black Mamma White Mamma." He naturally recoiled but he did not then know how poisonous the argument was or how to handle or dispose of it.
The problem was perplexing to all concerned, and we decline "to take the scorner's seat or hurl the cynic's ban" at anyone concerned. State's counsel evidently thought that the witness Mills had testified that defendant had said he had been to a movie entitled "Black Mamma White Mamma," but there was no such testimony. The veteran trial judge doubtless pondered the question, but no one supplied a positive answer. In the light of what had occurred, we can fully understand the immediate reaction of the trial judge, and the writer would probably have ruled as he did; but the argument made, with all of its implications under the circumstances, becomes more clearly impermissible and prejudicial, the more it is considered. The jury well knew, or had good reason to believe, that State's counsel had been reliably informed that defendant had been to see "Black Mamma White Mamma" shortly before the crime was committed and there was no way to erase that from the minds of the jury. A mistrial should have been granted, and the judgment should be reversed. We conclude that there was no intentionally improper argument on the part of counsel for the State, that the trial court is not to be blamed for not immediately seeing, through the smoke of what occurred, the now obvious injustice to defendant, that defendant's counsel is not to be blamed for not being able at the time to point out to the trial judge by appropriate measures how much his client had been hurt; but greatly hurt he was. In this connection it should be noted that by agreement of parties the court charged the jury on the lesser included offense of an assault and battery. Furthermore, there was and is no contention by the State that appellant is the person who caught hold of the victim of the assault and put her partly in the automobile, but that defendant, while sitting under the steering wheel of the automobile aided and abetted the other in the commission of the crime.
The foregoing opinion was prepared by Supernumerary Circuit Judge Leigh M. Clark, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945. The judgment of the Court below is reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
All Judges, concur.
[1] ". . .2. slang; WOMAN, WIFE."
 Webster's New International Dictionary (3d ed. 1961, but not in 2d ed. 1950);
 ". . .2. Slang. A voluptuous woman: the last of the red-hot mammas." The American Heritage Dictionary (1969).