The appellant was charged with unlawfully selling, furnishing, or giving away heroin, in violation of the Alabama Uniform Controlled Substances Act. After a trial by jury, he was found guilty and sentenced to fifteen years imprisonment. Notice of appeal was given, and a motion for a new trial was made and subsequently denied.
The State's evidence showed that Deputy James R. Donald, an undercover agent with the United Narcotics Detail Operation, met Deputy Gary Harris on July 21, 1978, and was told to go to 621 Yellow Bird Lane, Birmingham, Alabama, where Donald was to attempt to make a drug purchase. Donald was given one-hundred and twenty-five dollars to be used to buy the drug. According to Donald, when he arrived at the address, the defendant identified by Donald in court admitted him into the house and, subsequently, sold him one teaspoonful of heroin, which the appellant wrapped in aluminum foil. Donald testified that he paid the defendant one-hundred and twenty-five dollars for the heroin. *Page 20 
Donald again met Harris, and the substance in the aluminum foil was turned over to him. Donald stated that the substance in the aluminum foil was placed in an evidence envelope and initialed by both of the officers.
During cross-examination, Donald acknowledged that he did not see the appellant's wife. The witness did not recall seeing any children. Further, he said that, the appellant never left the room while the sale was being made. He merely took some aluminum foil from a shelf over the washing machine and, using a spoon, measured out an amount of heroin, which he then wrapped and gave to Donald. Donald stated that he was sure he had made no buys that day other than the one he had made from the appellant.
Jefferson County Deputy Gary Harris, who, on July 21, 1978, was employed with United Narcotics Detail, stated that he instructed Donald to attempt to purchase heroin from the appellant. According to Harris, he followed Donald to 621 Yellow Bird Lane, where he arrived at approximately 6:12 P.M. Harris said that he drove by the residence and saw Donald go to the door. Further, Harris testified that he did not see Donald walk out of the house, but did see him drive away from the residence in his car. Harris followed Donald back to the parking lot at 6600 Belview Drive. According to Harris, Donald at that time gave the witness a small tin foil packet. He opened the packet and saw that it contained a "light brown powdery substance." Harris said that he placed the packet in a small evidence envelope and sealed it. Further, he testified that he and Donald initialed the seams of the evidence envelope and that it was placed in the trunk of Harris' car.
Harris stated that the envelope was kept in the trunk of his car from Friday, July 21, 1978, until Monday, July 24, 1978, when the evidence envelope was turned over to the State Toxicologist.
During cross-examination, Harris acknowledged that he did not work during the days when the heroin remained in the trunk of his car. Further, he did not remember using the car between Friday evening, July 21, 1978, and Monday morning, July 24, 1978. Also, he said that the car remained parked in the driveway of his residence and, as far as he knew, he had the only key to the trunk of the car.
Jerrell Wayne Burrow was employed by the Birmingham Division of the Alabama Department of Forensic Sciences, which was formerly known as the Department of Toxicology. He testified that on July 24, 1978, he received, from Deputy Harris, an envelope with an aluminum foil packet inside. According to Burrow, the packet contained 1.099 grams of light brown powder, which an analysis revealed was heroin. During the trial, he identified the envelope with the packet, marked as State's Exhibit No. 1.
Deputy Harris was recalled to the stand, and he also identified the envelope marked as State's Exhibit No. 1. He testified that he recognized the envelope and that his initials appeared on it.
Deputy Donald was also recalled to the stand, and he identified State's Exhibit No. 1. He testified that he recognized the envelope and indicated that his initials appeared on the envelope.
At the end of Donald's testimony, objection was made to State's Exhibit No. 1, on the ground that the chain of evidence was not "connected." The objection was overruled, and the State rested its case. Appellant, at that time, moved to exclude the evidence on the ground that a prima facie case was not made, but this motion was also overruled.
The appellant did not take the stand, but his wife, Mary Patton, was called as a witness. She testified that she lived at 621 Yellow Bird Lane in Hueytown, Jefferson County, Alabama, with the appellant and their three children. The witness stated that she usually arrived home from work about 5:00 P.M. She did not recall anyone coming to the house on the evening of July 21, 1978. Further, she stated that she had never seen Officer Donald before and had not seen him at her house on the day in *Page 21 
question. According to Mrs. Patton, her children were in the den on the night of July 21, 1978. She stated that the family owned a vicious dog which guarded the house by biting anyone who knocked on the door. Further, she testified that the small room containing the washing machine and dryer did not have any shelves and, to her knowledge, her husband did not keep any aluminum foil in that room.
Mrs. Patton stated that she had not observed any powder of any type which was contained in State's Exhibit No. 1.
At the end of Mrs. Patton's testimony, the defense rested. Subsequently, closing arguments were presented by both parties.
 I
The appellant contends that the chain of custody of the package of heroin was not sufficiently connected to justify its admission into evidence. He maintains that the depositing of the package of heroin over the weekend in the trunk of the automobile owned by the law enforcement agency did not provide sufficient security to assure that no one tampered with the evidence. Because Deputy Harris was not certain whether he had the only keys to the automobile, the appellant argues it was reasonable to assume that others in the law enforcement agency may have had access to a set of keys to the vehicle driven by Harris. Also, he argues that a conflict in testimony between the amount of heroin measured at the time of the sale and the amount ultimately examined by the toxicologist "increases the likelihood of unauthorized excess."
In support of this contention, the appellant has cited Motesv. State, Ala.Cr.App., 356 So.2d 712, a case in which this court upheld the admissibility of evidence which had previously been locked in an automobile trunk. However, in Motes, the evidence had been placed in a lock-box inside the locked automobile trunk, and the only person having access to both keys was one police officer. In the present case, testimony showed that Harris and Donald had sealed the packet of heroin in an evidence envelope, which they initialed and locked in the trunk of Harris' car. No evidence that the envelope had been tampered with was presented, nor was there presented any evidence that any person other than Harris had access to the car. In fact, Officer Harris testified that, "as far as [he] knew" he had the only set of keys to the automobile, which remained in his driveway over the weekend. Nothing which would indicate that continuity of possession had been disturbed was shown.
As was shown in Henry v. State, 57 Ala. App. 383,328 So.2d 634, the fact that others may have had keys to a cabinet containing evidence did not render insufficient the chain of custody to establish a jury question "as to the accuracy of the exhibit's identification." As in Henry, the testimony in the present case contained nothing to indicate that "the continuity of the possession has been disturbed."
The possession and custody of the package of heroin by Harris were sufficiently established. No missing link in the chain of identification due to the fact that the heroin had been locked in Harris' car from Friday evening until Monday morning was shown. The fact that the evidence, a packet of heroin, was placed in the trunk for some two days would not disturb the continuity of possession without some evidence of an intervening force.
In Mullins v. State, 56 Ala. App. 460, 323 So.2d 109, testimony showed that, on February 18, 1973, a State Trooper had placed a sealed envelope containing marijuana in the trunk of his car and that, on February 22, 1973, he turned the envelope over to the State Toxicologist for examination. During the trial in Mullins, the officer testified that, prior to placing the evidence in the trunk of his automobile, the marijuana was placed in an envelope, and it was sealed and initialed. This court in Mullins, stated:
 "The identification and continuity of possession were sufficiently shown affording ample assurance of the authenticity of the envelope and its contents and the analysis conducted by the Toxicologist." *Page 22 
In the present case, the evidence shows that the package of heroin was placed in an evidence envelope, sealed and initialed by the two officers. Because it remained locked in Harris' automobile trunk for two days and because there was no evidence of outside interference or tampering with the contents, we believe ample assurance of the authenticity of the envelope and its contents was shown. A conflict in testimony regarding the amount of drug received by Deputy Donald is not conclusively shown. From the record we find:
"Q. What did he do?
 "A. He gave me, you know — I told him I wanted a teaspoon. So, he took some in a teaspoon and dumped it on a piece of aluminum foil."
This testimony does not show whether the amount of heroin was in fact a "full teaspoon." Further, this testimony is not in conflict with the following testimony of the toxicologist:
 "Q. Would you say that it is may be a half a teaspoon or a little less?
 "A. Possibly, yes. It is enough to see. Quite a bit to see in the teaspoon.
 "Q. But not nearly what would be considered a full teaspoon if you have a teaspoon measuring device?
 "A. Not having put it in a teaspoon and everything, I wouldn't know if it would cover it up level with the top of the teaspoon or not.
"Q. It would be something less than a teaspoon?
"A. Right."
We do not believe that the foregoing testimony of Donald and the toxicologist would support a contention of inauthenticity of the evidence envelope and its contents.
As was stated in Blakely v. State, Ala.Cr.App.,344 So.2d 812.
 "To warrant the reception of an object in evidence against an objection that an unbroken chain of custody has not been shown, it is not necessary that it be proved to an absolute certainty, but only to a reasonable probability, that the object is the same as, and not substantially different from, the object as it existed at the commencement of the chain."
[Emphasis added].
In our judgment, the facts in the present case show more than a reasonable possibility to believe that the heroin turned over to the toxicologist was the same heroin previously purchased from the appellant two days before. Therefore, the evidence was properly admitted.
 II
In closing argument, the prosecuting attorney made the following remarks to the jury:
 "MR. TUCKER: Your job is to find this man guilty and let every drug dealer in Hueytown, Bessemer, Pleasant Grove or anywhere else in the State, know that we are not going to put up with heroin in our community. We are not going to put up with it getting in the veins of our children."
Defense counsel objected to the argument as being improper. He now maintains that this was an appeal to the passion and prejudice of the jury and was unsupported by the evidence. He insists that the remarks denied to the appellant his right to a fair and impartial trial.
The appellant relies on two cases, Williams v. State, 42 Ala. 563, 171 So.2d 474, and Racine v. State, 290 Ala. 225,275 So.2d 655, to support his insistence of error. Williams
involved a prosecution for violation of the prohibition law by a grocery clerk who allegedly sold whiskey to an alcohol beverage control officer. The solicitor, in his remarks to the jury, commented, "A kid could have got it . . ." After objections by the defense attorney were overruled, the prosecuting attorney stated, "It could go uncontrolled in the hands of children and we can form our reasonable inference of the testimony."
The court in Williams, supra, said that, although the trial court attempted to instruct the jury on the subject of "inference from the evidence," no inference regarding children and whiskey could be drawn from the evidence presented. *Page 23 
Racine, supra, involved a prosecution for selling lysergic-acid-diethylamide [LSD]. The defendant had given LSD to a friend, who in turn sold it to an undercover agent. The district attorney, in his closing argument, called the defendant a man "who makes money from turning everyone else on." The prosecuting attorney added that he "didn't know whether they would give the LSD to five-year-olds just to make $60.00." The Supreme Court of Alabama stated that the remark was unsupported by the record and was impermissible because it was an appeal "to passion and prejudice, in light of its reference to the sensitive subject of children."
In the present case, we do not believe that by "clear implication," the above quoted statement by the prosecutor directly charges that the appellant had sold heroin to children. The trial judge is in a far better position than we to determine the impropriety of closing remarks because we review from a "cold record." It may be said that an inference that the comment indicated a sale of heroin to children could be drawn. However, the remarks could also be understood as a comment on the evils associated with the sale of heroin. In this light, the comment could be viewed as an appeal for law enforcement. See Diamond v. State, Ala.Cr.App., 363 So.2d 109, and the cases cited therein.
 III
In the present case, there is legal evidence to show that the appellant did sell heroin to an undercover officer, and any conflicting testimony by the appellant's wife would only present a question for the jury to decide. Under the facts in this case, there was sufficient legal evidence from which a jury could, by fair inference, find the accused guilty. Under these circumstances, this court has no right to disturb the verdict. Therefore, overruling by the trial court of the motion to exclude and the motion for a new trial was not improper.Rider v. State, 56 Ala. App. 137, 319 So.2d 756; Simms v. State,56 Ala. App. 156, 320 So.2d 89; Young v. State, 283 Ala. 676,220 So.2d 843.
After examining the record and transcript of evidence, we find no error prejudicial to appellant, therefore the judgment of conviction by the Jefferson Circuit Court, Bessemer Division is affirmed.
AFFIRMED.
All the Judges concur.