COBB, Judge.
This case was originally assigned to another judge on the Alabama Court of Criminal Appeals. It was reassigned to Judge Cobb on January 17, 1995.
Frederick Lamar Warren, the appellant, was convicted of three counts of the sale of a controlled substance i.e., crack cocaine. He was sentenced to 12 years in the penitentiary on each count. The appellant raises one issue on appeal. He contends that the trial court erred in admitting the cocaine into evidence because, he says, the State did not prove a proper chain of custody.
In Ex parte Holton, 590 So.2d 918, 920 (Ala.1991), the Alabama Supreme Court set out the test for establishing a chain of custody-
“The chain of custody is composed of ‘links.’ A ‘link’ is anyone who handled the item. The State must identify each link from the time the item was seized. In order to show a proper chain of custody, the record must show each link and also the following with regard to each link’s possession of the item: ‘(1) [the] receipt of the item; (2) [the] ultimate disposition of the item, i.e., transfer, destruction, or retention; and (3) [the] safeguarding and handling of the item between receipt and disposition.’ Imwinklereid, The Identification of Original, Real Evidence, 61 Mil. L.Rev. 145, 159 (1973).
“If the State, or any other proponent of demonstrative evidence, fails to identify a link or fails to show for the record any one of the three criteria as to each link, the result is a ‘missing’ link, and the item is inadmissible. If, however, the State has shown each link and has shown all three criteria as to each link, but has done so with circumstantial evidence, as opposed to the direct testimony of the ‘link,’ as to one or more criteria or as to one or more links, the result is a ‘weak’ link. When the link is ‘weak.’ a question of credibility and weight is presented, not one of admissibility.”
The circuit court erred in receiving the cocaine into evidence because a sufficient chain of custody was not established. The State failed to prove the ultimate disposition of the cocaine and its safeguarding and handling while in the possession of police undercover operative, Chris West. The State also faded to identify a link in the chain.
West allegedly bought what was identified as cocaine from the appellant on three occasions occurring on September 19, 25, and 27, of 1991. This cocaine was presented in sealed envelopes as State’s exhibits 1, 2, and 3, respectively. Although testimony at trial indicated that the first cocaine purchase occurred on September 19, West himself could not specify the date of his first cocaine purchase from the appellant. He could not specify how many people he had purchased cocaine from over the course of the six-week undercover operation that resulted in appellant’s arrest. He could not specify how many cocaine dealers sold him cocaine contained in matchboxes like the appellant allegedly had. R. 48-49. However, he remembered making a number of buys in the same area as the alleged buy from the appellant. R. 50-51. West testified that after buying cocaine from the appellant he drove to a location behind the City of Samson armory to meet one of his supervisors, either Officer Ray Mock or Officer Donald Weeks. Mock was present after the first purchase, but West was not sure which supervisor attended after the other purchases. West placed his initials across the back of all three envelopes containing the evidence. R. 59-60. A piece of newspaper was contained in the envelope containing exhibit 1. West did not know how it got there. R. 55, 58-59. He testified that he had sealed all three exhibits “before [he] left [the armory] ... and [they were] ready to go to the lab.” R. 59. West could not remember what happened next. He testi *1028 fied, “I’m not sure if I kept [them], or if [Mock] took [them] to the police station.” R. 44-45. However, West testified that he never went to the police station after a buy because it was too dangerous; “So, for [the cocaine] to get to the police department, [he] had to have given it to someone else ... [he] just [did not] recall who[.]” R.45. If, according to West, he did retain possession of the substance, it was taken to his home and placed “[i]n [his] bedroom closet” which was not locked and to which his wife and four-year-old child had access. R. 45-46. “Frederick Warren” and “Little Bit” were written underneath a piece of tape on the envelope containing exhibit 1. R. 60. West testified that he did not write these notes and could not account for their presence.
“Q. So someone, in order to have written ‘Little Bit’, had to have written on this envelope or had to have this envelope prior to [its] being taped then, didn’t they, Mr. West?
“A. No one had it prior to [its] being taped.
“Q. Can you tell me how they managed to write underneath this tape, sir, without having it before it was taped?
“A. No.”
R. 60-61.
West testified that he took the exhibits to the lab and that he picked them up from the lab after testing. He stated that the exhibits were then placed in the Samson Police Department vault until trial. Officer Weeks brought the exhibits to court.
Neither Officer Mock nor Officer Weeks testified.
Mark Cruz of the Alabama Department of Forensic Sciences (DFS) in Dothan, Alabama, testified as follows. Cruz identified exhibits 1, 2, and 3 as material he received on October 8, 1991, from West. The exhibits were sealed in separate envelopes when received. R. 112-13. Cruz opened the opposite end of the envelopes from the end sealed by the police. He did not tamper with the police seal. R. 117. Neither he nor anyone in his office wrote “Frederick Warren” or “Little Bit” on exhibit 1. R. 118. Cruz did not put the newspaper into the envelope containing exhibit 1. R. 118. On October 23, 1991 Cruz, determined that the material being tested was cocaine. “Everything was re-sealed in the original packaging and then placed in a secure storage facility” until it was returned to Officer West on October 30, 1991. R. 114. The envelope containing exhibit 1 appeared to be in the same condition as when he turned it over to West. R. 114.
The trial court admitted the cocaine over the appellant’s chain of custody objection stating, “I find that it goes to the weight of the evidence rather than the admissibility.” R. 124. The facts show that the State did not prove the “ultimate disposition” of the items while in West’s possession. We cannot infer that West gave the cocaine to Mock or Weeks at the armory because West testified that he may have kept the cocaine in his possession. He testified that he did not remember what he did with the cocaine after reporting to his supervisors. All West was sure of was that he took the evidence to DFS but he did not state where he picked it up from in order to deliver it to DFS. It is impossible to tell if Mock or Weeks ever received the cocaine from West or if either of them wrote the words “Frederick Warren” and “Little Bit” under the police seal on the envelope containing exhibit 1 without their testimony. If we did assume that Mock or Weeks received the cocaine from West at the armory, then there was no testimony regarding the safeguarding of the cocaine while under their control. The facts in this ease are distinguishable from those in Land v. State, [Ms. CR-93-483, January 13, 1995] — So.2d — (Ala.Cr.App.1995). In Land, a police officer failed to identify the person at the DFS to whom he gave two exhibits. However, in Land sufficient testimony was presented, including that of the DFS employee, to allow the court to “infer” that this DFS employee had received the evidence. There was also extensive testimony regarding the evidences safeguarding of the evidence.
If we infer from the testimony that West kept the cocaine, then the State failed to show the safeguarding and handling of the cocaine while in West’s possession. The evidence would have been kept in West’s bedroom closet, which was open to his house *1029 hold. Exhibit 1 would have been unguarded in his closet for a month, and exhibits 2 and 3 for at least two weeks. This is distinguishable from eases where the police officer retains possession of the evidence but it is locked away in some fashion and the officer maintains exclusive control over the evidence. See Motes v. State, 356 So.2d 712 (Ala.Cr. App.), cert. denied, 356 So.2d 720 (Ala.1978) (this court upheld the admissibility of evidence placed in a lock-box inside a locked automobile trunk; the only person having access to both keys was one police officer); Patton v. State, 384 So.2d 19 (Ala.Cr.App.), cert. denied, 384 So.2d 23 (Ala.1980) (heroin placed in envelope, which was sealed and initialed by the two officers and remained locked in officer’s automobile trunk for two days); Ex parte Garrett, 608 So.2d 337 (Ala. 1992) (bag of marijuana sealed in an envelope, and locked in officers briefcase); Gray v. State, 600 So.2d 1076 (Ala.Cr.App.1992) (sealed envelope containing marijuana was kept in officer’s bedroom inside a locked briefcase until the next day); Ex parte Williams, 548 So.2d 518 (Ala.1989) (sheriff kept the evidence in his living quarters overnight while he remained present; Ex parte Williams, 505 So.2d 1254 (Ala.1987) (plastic bag containing evidence either in officer’s possession or in a locked cedar chest, to which officer had the only key, at officer’s residence); Talley v. City of Clanton, 495 So.2d 1165 (Ala.Cr.App.1986) (evidence left in officer’s car unattended for a short period of time).
The testimony, viewed in the light most favorable to the State, shows a break in the chain of custody. Cases holding that keeping evidence in a sealed container is sufficient to assure its integrity, Lane v. State, 644 So.2d 1318, 1321 (Ala.Cr.App.1994), cannot be relied upon here. This is especially true regarding exhibit 1, on which the words “Frederick Warren” and “Little Bit” appeared under the seal. West’s testimony failed to identify a link in the chain of custody. There was no evidence accounting for the whereabouts of the cocaine between West’s meeting his supervisor at the Samson Armory and its receipt by DFS. Furthermore, neither of the two options presented by West accounted for the safeguarding and handling of the evidence between receipt and delivery to DFS. Therefore, the trial court erred in admitting the cocaine over the appellant’s objection. The judgment of the circuit court is reversed and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.